[S. F. No. 1892.   Department Two.—January 9, 1902.]

FRANK E. SOHLER et al., minors, by their Guardian ad Litem, Appellants, v. LENA SOHLER, and PAUL REUSS, Respondents.

135  323|
136  598|
135 323
e138 223
138 541
e138 542
135  323
144  419,

EQUITY JURISDICTION—FRAUD IN OBTAINING DECREE OF DISTRIBUTION—INTRINSIC FRAUD—ABSENCE OF POWER TO SET DECREE ASIDE.—A court of equity cannot relieve against intrinsic fraud in obtaining a decree of distribution of the estate of a deceased person by mere perjured testimony; nor has it jurisdiction, on any ground of alleged fraud in obtaining the decree, to set it aside, or to interfere in any manner with the exclusive jurisdiction of the probate court.

ID.—EXTRINSIC FRAUD—FRAUDULENT HEIR—MISREPRESENTATION BY MOTHER OF MINOR HEIRS—TRUST—LIMIT OF EQUITABLE RELIEF.— Where fraud extrinsic to the merits was committed upon the court, in defrauding minor pretermitted heirs, by an executrix who was their mother and natural guardian, by not disclosing to the court their full rights, and falsely representing to the court in her petition for distribution that another son of hers, who was not an heir of the deceased, was his child, and by conspiracy with him fraudulently procured distribution to him of a part of the estate which would otherwise have gone to the minor heirs, equity has jurisdiction to declare such fraudulent distributee a trustee of the defrauded minor heirs, who had no knowledge of the fraud, and to compel a conveyance from him to them, or if a conveyance cannot be had, to hold him accountable to them for the value thereof.  This is the limit of the power of equity to afford relief in dealing with the matter.

APPEAL from a judgment of the Superior Court of Lake County.  R. W. Crump, Judge.

The facts are stated in the opinion of the court.

Thomas B. Bond, for Appellants.

Fraud in obtaining a judgment is not concluded by the judgment where the plaintiff in equity had no knowledge of his rights, and could not have protected them.  (*Dunlap* v. *Steere*, 92 Cal. 344;[1] *Hayden* v. *Hayden*, 46 Cal. 336; *Baker* v. *O'Riordan*, 65 Cal. 368.) Equity will relieve against a judgment obtained in fraud of the plaintiff's rights, without notice. (*California Beet Sugar Co.* v. *Porter*, 68 Cal. 370.)   Fraud

—————
[1] 27 Am. St. Rep. 143, and note.

in obtaining a decree of distribution in a probate court by imposition on the court will be relieved against in equity. (*Hayden* v. *Hayden,* 46 Cal. 336; *Baker* v. *O'Riordan,* 65 Cal. 368; *Benson* v. *Anderson,* 10 Utah, 135.) A court of equity will relieve against fraud in a decree which is extrinsic and collateral to the merits. (*Sullivan* v. *Lumsden,* 118 Cal. 668, 669; *Mosby* v. *Gisborn,* 17 Utah, 257; *Bergin* v. *Haight,* 99 Cal. 52; *United States* v. *Throckmorton,* 98 U. S. 61.) A false representation in a petition to the probate court, operating as a fraud upon the court, is ground for relief in equity. (*Wickersham* v. *Comerford,* 96 Cal. 433.) An order or decree in the probate court obtained by fraud will be set aside in equity. (*Sanford* v. *Head,* 5 Cal. 297.) Fraud in obtaining a decree of sale and deed in the probate court, in violation of a trust relation, is ground for avoiding the sale and deed in equity. (*Bergin* v. *Haight,* 99 Cal. 52; *Mosby* v. *Gisborn,* 17 Utah, 257.)

T. J. Sheridan, and Dan Jones, for Respondent.

The decree of distribution is a judgment *in rem,* and binds the world. (Code Civ. Proc., secs. 1666, 1908; *Daly* v. *Pennie,* 86 Cal. 553;[1] *William Hill Co.* v. *Lawler,* 116 Cal. 359; *Crew* v. *Pratt,* 119 Cal. 139; *Lynch* v. *Rooney,* 112 Cal. 279; *Williams* v. *Marx,* 124 Cal. 22.) No judgment or decree can be set aside for intrinsic fraud. (*In re Griffith,* 84 Cal. 107, 113; *Fealey* v. *Fealey,* 104 Cal. 354;[2] *Pico* v. *Cohn,* 91 Cal. 129;[3] *United States* v. *Throckmorton,* 98 U. S. 51; *Hanley* v. *Hanley,* 114 Cal. 690; *Gruwell* v. *Seybolt,* 82 Cal. 10; *Langdon* v. *Blackburn,* 109 Cal. 25.)

HENSHAW, J.—Plaintiffs, by their guardian *ad litem,* instituted this action to set aside the decree of distribution given in the estate of Xaver Sohler, deceased, or so much of it as distributed one eighth of the estate to the defendant Paul Reuss, as the son of the deceased. The court sustained a general demurrer to the complaint, and from the judgment which followed plaintiffs appeal.

Upon the appeal the peculiar and somewhat remarkable allegations of the complaint are, of course, to be taken as true.

[1] 21 Am. St. Rep. 61.        [3] 25 Am. St. Rep. 159, and note.
[2] 43 Am. St. Rep. 111, and note.

It is alleged that Xaver Sohler died in the county of Lake, testate; that his widow, the defendant Lena Sohler, became executrix under the will; that the will left all of the property to the widow, and the children were pretermitted heirs. The court, therefore, properly held that the widow was entitled to but a one-half interest in all the estate of the deceased, and that the children were entitled to equal parts of the other moiety. When the estate was ready for distribution, the executrix petitioned, and setting forth the names of the other children, plaintiffs herein, alleged in the petition that the defendant Paul Reuss was likewise a child of the deceased, and therefore entitled to a one eighth of his property upon distribution. The notices required by the probate law were given, and the matter came up for hearing upon the twentieth day of December, 1897, upon which day the court made its decree determining heirship and distributing the property, and in so doing decreed that Paul Reuss was a son of the deceased and entitled to one eighth of the deceased's estate. Distribution was made accordingly. These children were the minor children of the executrix, Lena Sohler, had no actual notice of the proceedings, had no notice nor knowledge of the falsity of the claim set up on behalf of Paul Reuss, and were not represented at the hearing, excepting as they were represented by the executrix, as their trustee, and by the executrix, as their mother, in her capacity of natural guardian. That the fact was, and was known to Paul Reuss and to Lena Sohler, but was not known to these plaintiffs, that Paul Reuss was not the son of the deceased, but was the son of Lena Sohler, their mother; that Lena Sohler and Paul Reuss connived and conspired to mislead and deceive the court in the making of its decree, so distributing one eighth of the property of the estate to Paul Reuss, and to keep plaintiffs in ignorance of their just claims of ownership and of right of distribution to this one eighth of the estate thus distributed. Following this are the averments of the prompt commencement of the action after the discovery of the fraud, the appointment of the guardian *ad litem* for that purpose, the fact that the time for appeal from the decree had expired, and that an appeal would be unavailing, because upon the face of the record, which would be brought up on such appeal, no error could be shown. The relief prayed is for the

vacation and annulment of such part of the decree of distribution as distributes one eighth of the estate of the deceased to Paul Reuss, otherwise Paul Sohler; that the property so distributed to Paul Sohler be declared to be the property of these plaintiffs in equal shares, and that it be distributed to them accordingly.

Respondents, against the sufficiency of the complaint, urged by their demurrer that it is the exclusive province of the court in probate to determine heirship and decree distribution; that the complaint goes no further than to charge intrinsic fraud, in that Paul Reuss succeeded, by false and perjured evidence, in obtaining a favorable decision upon a matter essential to the proceeding, and one in which the court was bound to exercise its judgment, and notwithstanding that the decision was obtained by such evidence, this fact affords no ground for relief in equity. If this were all the complaint discloses, the respondent's contention would be undoubtedly sound; for it is the general rule that intrinsic fraud, fraud by which a decree or judgment is obtained by false evidence upon issues within the case, is not such fraud as equity will relieve against, the theory being that the losing litigant has had his day in court, and that while it must always remain a misfortune that private causes shall be lost by forsworn testimony, yet stronger than this consideration is that which declares it to be the policy of the law to make an end of litigation, and in the nature of things there never could be a final judgment if every judgment was open to avoidance upon the charge that fraudulent evidence had been introduced in its procurement. Therefore, it is the general rule that extrinsic fraud only will form the basis of such relief as is here sought, —extrinsic fraud consisting in the failure to give legal notice to the adversary, the prevention of him or his witnesses from attending the trial, and the like.

But when we come to scan the allegations of this complaint, it will be discovered that there is more alleged than the mere procurement of this decree by false evidence. The executrix of the estate was not alone the trustee of all of the heirs of the estate and of all the parties in interest thereto and thereunder. She was the mother of these minor plaintiffs, had their actual custody and control, and, as their natural guardian, was chargeable with all the high duties pertaining to that relation-

ship. As executrix merely, it might be argued that she was a disinterested party, having no concern whatsoever in the question of heirship or right of distribution, standing indifferent between the parties, and interested only in carrying into effect the determination of the court upon these questions. But, as the mother and natural guardian of these plaintiffs, her position was a very different one. She was under most solemn obligation to protect the legal rights of her infant and dependent offspring. She was under like obligation to disclose to the court, on their behalf and in their interest, all knowledge which she possessed, and she was under the same obligation to see that their legal claims to the estate were properly presented before the court in probate; and with peculiar force did this duty press upon her, in view of the fact that during all of this time she was executrix of, and administered upon, the estate through which her children were to derive their property. Such being her position, it is charged, that in violation of this duty, and of the rights of her minor children, she connived with her adult son—not an heir to the estate of the deceased—to procure for him a distributive portion of that estate, and that the conspiracy was carried to a successful termination. Here certainly is a charge of concealment upon the part of the guardian, when she should have spoken in the interest of her wards, and collusion upon the part of the guardian with another not in interest in the estate, to the end that that other might despoil the wards of their rightful inheritance. It cannot to this be answered that the probate proceeding upon distribution was not an adversary proceeding. It becomes adversary in every case where there are conflicting claims, and where there be not the most perfect understanding and harmony between the claimants. The moment heirship was set up by the false claimant, Reuss, that moment between him and the rightful heirs an adversary proceeding was at issue, and from that moment it became the duty of the guardian of these minor heirs to see that the fullest presentation of their claims was put before the court. This, by conspiracy with her co-defendant, it is asserted she did not do, and it is clear that her fraud in pushing on behalf of Reuss his false claim to heirship and distribution, and in concealing the truth from her own minor children, the

rightful heirs, and in leaving them in ignorance that they were thus to be deprived of their patrimony, was fraud extrinsic to the case, which prevented their being properly represented at the hearing, or from being represented at all.

We conclude, therefore, that the complaint presents a bill for equitable relief. But for what kind of relief? The relief prayed for is, that the court in equity should avoid so much of the decree as distributes the property to Paul Reuss, should decree that the plaintiffs are entitled to that property in equal shares, and should distribute it accordingly. The prayer for such relief derives support from the case of *Baker* v. *O'Riordan*, 65 Cal. 368. In that case a married woman, the owner of separate property in San Francisco, died while her husband was at sea. Her sister procured letters of administration upon the estate, and sought and obtained distribution upon a petition that her sister had conveyed the property to her in her lifetime by an unrecorded deed, which was lost. The appearance of the absent husband was falsely entered by an unauthorized attorney. The trial court found all these facts, but withheld relief, and this court declared that the plaintiff was entitled to the relief sought,—the setting aside of the decree of distribution. In Utah (*Benson* v. *Anderson*, 10 Utah, 135) the supreme court remanded a cause to the district court, with directions to set aside the decree of distribution made by the probate court, and enter its decree awarding one half of the estate to plaintiff. What peculiarities may or may not attach to the jurisdiction of the probate court in Utah, we are not advised, but in this state the jurisdiction to determine heirship, and to distribute the assets of an estate, is vested exclusively in the probate court, under proceedings *in rem,* strictly defined by the statute. It is a matter of gravest doubt, therefore, whether it is within the power of a court of equity in this state to set aside a decree of distribution so given by a court having exclusive jurisdiction of the matter. But even if the power existed, its exercise, or even the danger of its exercise, would have a most disastrous effect upon land titles. The title conferred by a decree of distribution, after regular proceedings in probate, has always been justly recognized as a title of high and unimpeachable value, because of the nature of the proceedings and of the exclusive jurisdiction which has been vested in the probate court to pass upon the questions

involved. If such a decree may at any time be vacated in equity, it must result that no title any longer stands secure. Moreover, aside from the question of title, inexplicable confusion in procedure would result. Would the court in equity, in vacating the decree, have the power to substitute one of its own? If so, apart from the consideration of the exclusive jurisdiction vested in the probate court, it would be the substitution of an equitable judgment *in personam* for the probate judgment *in rem,*—the substitution of a judgment which can never operate upon any but the parties and their privies, for a judgment which is binding upon the whole world. But if it be said that the power of the court in equity would be limited to the vacation of the decree remanding the matter to the probate court to frame a new decree, what assurance can there be that, after all this circuity of action and protracted delay, the decree of the court in probate might not be at variance with the views of the court in equity? Something of the same difficulty was experienced by the English chancery courts on the question of the jurisdiction of wills of personal estates, which there belonged to the ecclesiastical court, the jurisdiction of which latter court was held to be exclusive. Time and again was the attempt made to have equity overthrow the probate of a will procured in the ecclesiastical court by fraud. In *Barnesly* v. *Powel,* 1 Ves. Sr. 284, the jury returned a verdict against the will which had been admitted to probate, upon the ground that it was a forgery, and Lord Chancellor Hardwicke thus spoke: "As to the personal estate, I left it open in the decree, that the plaintiff should be entitled to relief in such manner as was agreeable to equity; because I saw there might be litigation concerning the manner of getting that relief; whether immediately, or by leaving the plaintiff to sue in the ecclesiastical court; both which are thereby taken in, which it would have been improper to have determined before; for if a verdict for the will, that would be out of the case. Undoubtedly, the principle laid down for the defendant is true, that the jurisdiction of wills of personal estate belongs by the constitution to the ecclesiastical court; according to which law it must be tried, notwithstanding the will is found forged by a jury at law by the examination of witnesses, which is sometimes unfortunate, causing different

determinations, as I have known it. Nor can this court help it; but the parties must take their fate, if by the strict rules of law it is so. But I will lay hold of any ground to alter that; nor give way, if I can avoid it, to run the hazard of these different determinations, and to try this will, so solemnly determined by examination of witnesses *viva voce,* again in the ecclesiastical court upon examination by deposition. Something of what the plaintiff insists on as a method to avoid this, fell from me at the hearing; and as to the general objection thereto, of breaking in upon the jurisdiction of the ecclesiastical court, however formerly doubted, it is certainly now settled by the Lords in *Kerrich* v. *Barnsby,* 7 Brown Parl. C. 437, that this court cannot set aside a will of personal estate for fraud. And though nothing was said there of forgery, that is stronger: nor will I infringe on what is laid down there, and in *Andrews* v. *Powys,* 2 Brown Parl. C. 504, and in the case of Mr. Hawkins's will. But there is a material difference between this court's taking on them to set aside a will of personal estate on account of fraud or forgery in obtaining or making that will, and taking from the party the benefit of a will established in the ecclesiastical court by his fraud, not upon the testator, but upon the person disinherited thereby, and claiming after the testator's death against it." It thus became the principle of the English courts of chancery, while permitting the probate to stand, as having no power to set it aside, to decree that the false legatee or wrongful executor was trustee for the rightful claimant. So here we hold that, under our system, the utmost that the court in equity could do, if it finds the facts to be as alleged, would be to decree that the defendant Paul Reuss holds title as trustee of the minor plaintiffs, and compel him to make conveyance and transfer to them accordingly of all that he may have obtained from the estate of the deceased to which they were entitled, or, if a conveyance of specific property may not be had, then to hold him accountable to the plaintiffs for the value thereof. This we believe to be the limit of the power in equity in dealing with the matter, and it is in accordance with the principle adopted by the English courts, expressed by Pomeroy as follows: "When probate is obtained by fraud, equity may declare the executor or other person

deriving title under it, a trustee for the party defrauded." (Pomeroy's Equity Jurisprudence., sec. 919, and note.)

The judgment appealed from is therefore reversed, with directions to the trial court to overrule defendants' demurrer.

McFarland, J., and Temple, J., concurred.