[Sac. No. 1056. Department One.—March 3, 1903.]

ANTONE J. SILVA, Appellant, v. FRANK J. SANTOS, Respondent.

GUARDIAN AND WARD—FRAUD IN PROCURING SETTLEMENT—JURISDICTION OF EQUITY—ACCOUNTING.—Where a decree settling the final account of the guardian of an incompetent person was procured by fraudulent concealment of moneys misappropriated by the guardian, and fraudulent misrepresentation to the court that he had made advances to the estate, equity has jurisdiction to afford relief and compel a full and just accounting.

ID.—PLEADING—SUFFICIENCY OF COMPLAINT.—The complaint in equity is not uncertain as to whether the accounting was sought for money received while acting as guardian, or after his guardianship closed, where it clearly appears that the money alleged to have been fraudulently obtained came to his hands as guardian; and there is no misjoinder of causes of action where the facts alleged all relate to the transactions of the guardian in managing the estate, and in failing as such guardian to perform his duties in the particulars alleged.

APPEAL from a judgment of the Superior Court of Sacramento County.  J. W. Hughes, Judge.

The facts are stated in the opinion.

Hopkins & Hinsdale, for Appellant.

Equity has jurisdiction to enforce an accounting where the guardian has abused his trust and been guilty of concealed fraud, depriving the ward of his property.  (Pomeroy's Equity Jurisprudence, sec. 1007; *Griffith* v. *Godey,* 113 U. S. 89; *Tobelman* v. *Hildebrandt,* 72 Cal. 313; *Latallade* v. *Orena,* 91 Cal. 565;[1] *Wainwright* v. *Smith,* 117 Ind. 414; *Line* v. *Lawder,* 122 Ind. 548.)

Wilbur F. George, for Respondent.

The jurisdiction of the probate court was exclusive, and its decree unappealed from is conclusive upon the appellant. (*Brodrib* v. *Brodrib,* 56 Cal. 564; *Tobelman* v. *Hildebrandt,* 72 Cal. 313; *Caujolle* v. *Ferrie,* 13 Wall. 461; Schouler on Domestic Relations, 3d ed., sec. 372.)  No fraud involved in the judgment of the probate court can be reviewed in equity. (*United States* v. *Throckmorton,* 98 U. S. 66; *Greene* v. *Greene,* 2 Gray, 361;[2] *Smith* v. *Lowry,* 1 Johns. Ch. 320; *Kelley* v. *Christal,* 81 N. Y. 619; 2 Pomeroy's Equity Jurisprudence, sec. 914; *Pico* v. *Cohn,* 91 Cal. 129;[3] *Hanley* v. *Hanley,* 114 Cal. 693.)

CHIPMAN, C.—The complaint alleges that on February 20, 1900, the appellant was adjudged insane and committed to the State Asylum for Insane; that on February 28, 1900, the respondent, Santos, was, by order of the trial court, appointed the guardian of the person and estate of appellant, and on March 2, 1900, qualified and entered upon the discharge of his duties as such guardian, and continued to act as such until November 26, 1900, when, by order of the trial court, he was discharged; that on November 10, 1900, the appellant was restored to legal capacity, and thereafter, on November 12th, the respondent, Santos, filed "what purported to be a final account of his transaction as guardian

[1] 25 Am. St. Rep. 219.        25 Am. St. Rep. 159, and note.
[2] 61 Am. Dec. 454, and note.

with the estate of said ward, plaintiff herein; and of the receipts and disbursements of money on account of said estate"; that on November 26, 1900, the trial court "duly made and entered its order approving and settling said account; that said order has not been appealed from or vacated, and the same remains in full force and effect"; that "on November 12, 1900, the respondent, Santos, filed his petition for his discharge as guardian of the appellant, and thereafter the trial court duly made and entered its order and decree adjudging that said defendant guardian's trust, as guardian aforesaid, had been fully administered, and that all the estate of this plaintiff had been paid over and delivered to him, and finally discharged said defendant from his said trust and revoked the said letters of guardianship; that said order has never been appealed from or vacated and the same now remains in full force and effect."

It appears from the complaint that Silva was engaged in the grocery business in the city of Sacramento, and among other merchandise dealt in by him was the produce received from his ranch in Yolo County, and it is alleged that his guardian continued the said business, and disposed "of such personal property of said ward's estate as by the court directed or otherwise"; that the guardian "sold certain cattle and produce and received certain moneys from the transaction of the business of the said estate, which he, the said guardian, has mingled with his own funds wrongfully and fraudulently and with intent to deprive this plaintiff out of the same"; and "has so managed the business of the estate of his said ward in the sale of produce, cattle, and general assets of the said estate . . . as to wrongfully and fraudulently and with the intent to deprive said ward from receiving the real value, profits, increase, and returns from the personal property of said estate in the following particulars."

Among the particulars of the alleged fraud, it is averred that the guardian "sold 16 hogs for the sum of $240.10, and accounted to the said estate for the sum of $136.00, and withheld and concealed from said ward the sum of $104.10 out of said $240.10"; that "he received a check from the Star Creamery for said estate for butter for the month of June, 1900, in the sum of $123.91, for which he never accounted to said estate, and withheld and concealed the same from the

said ward and his estate." Similarly, it is averred, that he
sold 151 bales of hay for $151, for which he never accounted;
that he sold two horses for $55, and accounted only for $25
of the same; that he sold 46 head of calves (of which number
23 were yearlings), and accounted for $276, or $6 per head,
and that they were of the value of $12.00 per head, and that
he "withheld and concealed" from the ward and the estate
$276 of said proceeds; that he harvested 85 tons of hay be-
longing to said estate, and, in violation of the lease, allowed
the lessee of the land to feed all said hay to the lessee's cattle,
and has never returned to the estate any account of said hay,
and has withheld and concealed from the estate the value of
said hay—to wit, $400. Like allegations are made that he sold
certain 45 sacks of barley and retained and failed to account
for $113.96 of the proceeds. These several items aggregate
over $1,200. It is also alleged that the guardian "wrong-
fully, fraudulently, and intentionally" so kept his books of
account as to show that he made advances to said estate in
the sum of $910, whereas the complaint "avers the truth to
be that said entries of said advancements are false, wrongful,
fraudulent, and made with the intent to deceive and deprive,
and did deprive plaintiff out of said sum."

The complaint sets forth other items wherein it is alleged
that the guardian made false entries in his books of account
of said estate, and it is alleged that the guardian possesses
full and accurate information respecting all his transactions
in the discharge of said trust, and that, by reason of his in-
competency during said period, plaintiff "is without means
of obtaining such information as will apprise him of the real
condition of his said estate." It is further alleged that the
said account filed by defendant on November 12, 1900, "pur-
ported to be a final account of his transactions as guardian,
. . . and of the receipts and disbursements of money on ac-
count of said estate, and falsely represented to the said court
that the same was a full and true account, whereas said ac-
count was neither full nor true, as defendant then well knew,
and did not embrace any account of the particular items,
omissions, mistakes, and frauds hereinbefore mentioned and
complained of; that said account was the only account ever
rendered by said defendant guardian to said court in the
matter of said estate." It is also alleged that defendant made

similar false and fraudulent representations in his petition for an order of final discharge from his trust. It is attempted to be alleged, but not clearly, that at the time of the settlement of said final account plaintiff had confidençe in the honesty and integrity of defendant and believed the representations made by him that the account so made by him was correct, and that after the settlement of the account and the discharge of the guardian plaintiff employed a bookkeeper to expert the account of said guardian, and that by reason of such experting of the books kept by defendant the plaintiff came into possession of the facts set forth in the complaint. The prayer is, that defendant ''be compelled by decree of this court to account to plaintiff for all his dealings and transactions with the property of said estate and the proceeds and increase thereof,'' with interest on such sums of money received by him as proceeds and assets of said estate from the time such sums were received by him and should have been by him accounted for to said estate, . . . and for such other and further or different relief as to this court may seem meet and proper,'' etc.

There was a demurrer to the complaint for insufficiency of facts; that the court was without jurisdiction, for the reason that the court in the exercise of its probate powers has exclusive jurisdiction; that there was a misjoinder of parties defendant in uniting the defendant deposit company (the complaint was dismissed as to the company, and this point need not have further attention) ; that there are several causes of action improperly united in this, that causes of action for disposing of certain property and failing to account for the proceeds are united with causes of action against the guardian for failing to perform his duties as guardian of plaintiff during the latter's incompetency. Also a cause of action for failure to account, etc., is united with a cause of action for moneys alleged to have been received by defendant after his guardianship was at an end. It is also alleged that the complaint is uncertain in this, that it cannot be ascertained therefrom whether the plaintiff seeks an accounting for money received by defendant while acting as guardian or after his guardianship ceased. The court sustained the demurrer without leave to amend, and the appeal is from the judgment. I do not think the complaint amenable to the objection of un-

certainty. It clearly appears that the money alleged to be fraudulently retained by the guardian came into his hands as guardian. I think it also appears with sufficient clearness that there is no improper uniting of causes of action. The facts alleged all relate to the transactions of the guardian in managing the estate and in failing as such guardian to perform his duties in the particulars averred. The question of jurisdiction will necessarily be reached in discussing the general demurrer. The principal question argued in the briefs is whether, upon the admitted facts stated in the complaint, the judgment of the court settling the guardian's account and discharging him from his trust, from which no appeal was taken, is final. Beyond dispute the jurisdiction of the superior court, sitting in probate, is both original and exclusive. (*Goad* v. *Montgomery*, 119 Cal. 552; [1] *Estate of Strong*, 119 Cal. 663; *Sohler* v. *Sohler*, 135 Cal. 323.[2] See, also, the earlier cases of *Graff* v. *Mesmer*, 52 Cal. 638; *Allen* v. *Tiffany*, 53 Cal. 17; *Brodrib* v. *Brodrib*, 56 Cal. 564.) Conceding this, however, appellant contends, and we think the law is, that equity has jurisdiction to interpose and furnish appropriate relief where a judgment or order has been attained by the employment of frauds and artifices such as would justify interference of such court. Appellant cites *Dean* v. *Superior Court*, 63 Cal. 473; *Tobelman* v. *Hildebrandt*, 72 Cal. 313; *Lataillade* v. *Orena*, 91 Cal. 565; [3] Pomeroy's Equity Jurisprudence, sec. 1007. To these may be added the more recent cases of *Curtis* v. *Schell*, 129 Cal. 208; [4] *Sohler* v. *Sohler*, 135 Cal. 323; and *Aldrich* v. *Barton*, *ante*, p. 220. In *Griffith* v. *Godey*, 113 U. S. 89, Mr. Justice Field said: "If the property be omitted by mistake, or be subsequently discovered, a court of equity may exercise its jurisdiction in the premises and take such action as justice may require. . . . And a fraudulent concealment of property, or a fraudulent disposition of it, is a general and always existing ground for the interposition of equity." We are aware of the rule that the fraud which will prevail to set aside a judgment or decree must be extrinsic and collateral to the questions examined and determined in the action.

[1] 63 Am. St. Rep. 145.          [3] 25 Am. St. Rep. 219.

[2] 87 Am. St. Rep. 98.          [4] 79 Am. St. Rep. 107.

(*Pico* v. *Cohn*, 91 Cal. 129; [1] *Hanley* v. *Hanley*, 114 Cal. 690; *Mulcahey* v. *Dow*, 131 Cal. 73.)    It was said in *Pico* v. *Cohn*, 91 Cal. 129,[1] that "it is settled beyond controversy that a decree will not be vacated merely because it was obtained by forged documents or perjured testimony." (See *Fealey* v. *Fealey*, 104 Cal. 354.[2])    It would seem to us, however, that the complaint brings to light transactions which were not embraced in the guardian's account, but are extrinsic and collateral to the matters set forth in it.    The case made is quite as strong as the facts presented in the recent case of *Aldrich* v. *Barton*, *ante*, p. 220.    The theory generally underlying the refusal of equity courts to vacate decrees is, that the complaining party has had his day in court, and that there must be an end of litigation, and that titles would often be thus disturbed and rendered uncertain, and the innocent be made to suffer.    *Sohler* v. *Sohler*, 135 Cal. 323, is a striking illustration of the flexibility of equity jurisdiction where to do justice to the injured and innocent and pursue the guilty the decree was not disturbed, but the party fraudulently benefited by it was held to be a trustee, and equity laid hold of him as such, leaving the original decree as to others unaffected.    The case here, as made in the complaint, appeals strongly to the conscience of the chancellor.    Plaintiff's mind for some time had been in an èclipse; he was adjudged an incompetent, and his business had, under the highest trust, been placed in defendant's keeping.    Within two days after plaintiff was restored to capacity defendant filed his account, and within twelve days obtained its approval and his discharge as guardian.    There is nothing unreasonable in plaintiff's assuming at the time that the account rendered was true and correct, and in his not discovering otherwise, as is alleged, until it was too late.    An appeal would not have availed him, for the fraud did not appear in the record, and a motion would not have reached the mischief, because there was an appeal. (*Wickersham* v. *Comerford*, 96 Cal. 433.)    Nor is there anything unreasonable in the court now, in the exercise of its equity powers, calling upon defendant to further account to plaintiff and to pay over to him any moneys which may appear by proofs to belong to plaintiff, by reason of the alleged frauds and concealments of his guardian while discharging

[1] 25 Am. St. Rep. 159, and note.        [2] 43 Am. St. Rep. 111, and note.

his trust. No one can be injured by such an accounting; no titles are involved, and no innocent persons will suffer. The rule of law which sanctions such a proceeding is wholesome, and should serve as an admonition to administrators, executors, guardians, and trustees generally, that they must, to the last moment of their trusteeship, scrupulously account for every dollar that has come into their hands in their trust capacity.

We advise that the judgment be reversed.

Gray, C., and Haynes C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed, with directions to the lower court to overrule the demurrer.          Van Dyke, J., Shaw, J., Angellotti, J.

Hearing in Bank denied.