PAUL, Respondent, v. PAUL et al, Appellants.

(170 N. W. 658).

(File No. 4368.   Opinion filed February 11, 1919.   Rehearing denied March 29, 1919.)

1. **Executors and Administrators—Re-opening Administration for Fraud, Jurisdiction to Entertain—Inherent Power of Probate Court.**

   Courts of record, such as probate and county courts, have inherent power, independent of statute, to vacate their judgments procured by extrinsic fraud and imposition upon the court. So **held**, in sustaining probate court in entertaining a petition for a hearing, filed some three years after estate was

closed, to re-open the administration for the purpose of setting aside final decree of distribution on the ground that the alleged widow, under whose petition administration and distribution was had, was not decedent's widow.

2. **Judgments—Foreign Decree of Divorce, Certified Copy as Evidence—Jurisdiction Over Person, Presumption Re.**

A certified copy of the judgment of a sister state, purporting to be one rendered by a circuit court presided over by a circuit judge, and reciting that a decree of divorce was thereby granted to the plaintiff named therein against the named defendant, etc., was competent evidence of rendition of such judgment, as against the objection that service of process upon defendant therein was not shown; that in absence of evidence to the contrary, it will be presumed that a court of general jurisdiction of a sister state, had jurisdiction of the subject matter and parties; that such court, presided over by a judge and having a clerk and other officers, will be presumed to be a court of record and of general jurisdiction; and burden of proof is upon objecting party to show lack of service of process if such was the case.

3. **Judgments—Res Judicata—Identity of Parties—"Paoli" for "Paul," Evidence Re, Effect.**

A judgment of divorce of a sister state, in which the surname of the parties appears as "Paoli" is admissable in evidence for the purpose of showing that the person pretending to have been the widow of decedent in the administration of an estate and whose name in said proceeding was "Paul," was not such widow, as against the objection of non-identity of the parties; there having been testimony by a son of decedent that "Paoli" was the Austrian name for "Paul,' and that they were the same parties who were parties to the divorce action; the more so .in that the names of the children of the deceased strongly tend to identify the parents respectively, in the two proceedings, as one and the same person.

4. **Evidence—Certificate of Marriage—Certified Copy, and Undisputed Evidence of Co-habitation—Re-marriage, As Fraud.**

A certified copy of a certificate of marriage in a sister state, together with undisputed evidence that after the marriage the parties lived together as husband and wife, sufficiently establishes the fact of marriage. Held, further, that the record of a subsequent marriage of the parties, was an afterthought and a fraud.

5. **Executors and Administrators—Decree of Distribution, Setting Aside for Extrinsic Fraud—Fraudulent Concealment as Fraud —Ignorance of Inquirying Heir, Effect.**

A decree of distribution, petitioned for by one falsely and fraudulently claiming to be the widow of decedent, was prop-

erly set aside upon the ground of extrinsic fraud; since fraudulent concealment of facts which would have caused the decree not to have been rendered, constitutes extrinsic fraud sufficient to authorize court, upon discovery of the fraud or upon its being called to court's attention, to vacate same; and filing of a fraudulent petition for administration is extrinsic fraud.  So **held,** where the son of decedent, some three years after final distribution, petitioned for setting aside of the decree on said ground; he being uneducated and with but little knowledge of court procedure in this country, and it appearing that during process of administration he inquired of the pretended widow, his mother and her attorney, and was informed that his mother already had everything fixed and had "got the property," and that he would get what was coming to him; he being absent at time of his father's death.

6. **Judgments—Judgment Procured Through Extrinsic Fraud on Court, Vacation Of, As Void—Estoppel Re Minors, Whether Applicable.**

Where judgment or decree was procured through and is the result of extrinsic fraud practiced on court, it may thereafter at any time be vacated and set aside as void; and where no intervening rights of innocent parties are involved, the equitable rules of estoppel have no application.  So **held,** in favor of petitioning minor brothers, heirs of decedent, to set aside decree of distribution based upon petition of one falsely claiming to be the widow of decedent.

Appeal from Circuit Court, Lawrence County.  Hon. JAMES McNenny, Judge.

Petition in probate court by Peter Paul, to set aside a final decree of distribution of the estate of Albine Paul, deceased, and to set aside all proceedings under administration of said estate, etc.  The county court rendered judgment upon petition, setting aside said proceedings as void, and adjudging due from Teresa Paul and the Western Surety Company, certain sums named; from which judgment Teresa Paul and said Surety Company appealed to the circuit court, judgment being rendered therein in favor of said petitioner; from which judgment Teresa Paul and the Western Surety Company appeal.  Affirmed.

*Kirby, Kirby & Kirby,* for Appellants.

*Geo. W. Kephart,* and *Martin & Mason,* for Respondents.

(1) To point one of the opinion, Respondents cited:
3 N. D. 343.

(3) To point three, Appellants cited:

4 Words & Phrases, 3380.

(5) To point five, Appellants cited:

Reeves v. Reeves, 24 S. D. 435; U. S. v. Throckmorton, 98 U. S. 61; 25 L. Ed. 93; Hanley v. Hanley, 46 Pac. (Cal.) 736.

Respondents cited:

Nugent v. Railway Company 61 N. Y. Supt. 476-479; Marshal v. Holmes, 12 Sup. Ct. Rpt. 62-64; Graver v. Faurot 76 Fed. 257; Wickersham v. Comerford, (Cal.) 31 Pac. 358; 2 Pomeroy Eq. Jur. Sec. 919; Smith v. Smith 210 Fed. 947-951; Sohler v. Sohler, (Cal.) 67 Pac. 282.

McCOY, J. It appears from the record that in August, 1911, one Albine Paul died at Deadwood in Lawrence county, possessed of an estate of the value of $8,599. Immediately after his death, one claiming to be Teresa Paul, the widow of said Albine Paul, applied to the county court of said county for letters of administration, which were issued to her on October 5, 1911; she having given administrator's bond in the sum of $20,000, with the appellant Western Surety Company as surety. In her petition for administration she alleged that she was the widow of the deceased and named herself and her four sons, Louis, Peter, Charles, and Joseph, as the heirs and next of kin of said Albine Paul. In the course of such administration, the widow's share of $750 was set off to said Teresa Paul, and an allowance of $50 per month given for the support and care of minor children. After the payment of the debts and expenses of administration, including the said widow's share and family allowance of $300, there remained $6,314.57, which sum was by final judgment and decree of distribution of said county court on October 2, 1912, ordered distributed to said Teresa Paul $2,104.85, and to each of said four children $1,052.43, and that thereafter distribution was had in accordance with said judgment.

On September 20, 1915, the said Peter Paul filed a petition in the county court of said county alleging that on May 29, 1902, his father and mother had been divorced, and that in 1909 his mother was remarried to one Penzine, whose wife she was at the time Albine Paul died, and demanding judgment that all prior proceedings had under the said administration of said estate be set aside, a new administrator appointed, and her said bond held liable for the share of the estate which she had received. On this

petition the county court made an order requiring the said Ter-esa Paul and the Western Surety Company to show cause why such relief should not be granted. On the return day of such order to show cause, the said parties moved the court to dismiss said petition and order, on the ground that all questions presented by the petitioner had been settled by the judgment of the county court rendered some three years previous thereto, and that the court was then not authorized to investigate any of such questions. This motion having been denied and exception taken, the county court rendered judgment finding the allegations of the petition to be true, and that all proceedings herein had by said Teresa Paul were void, and also adjudged that there was due from said Teresa Paul and the Western Surety Company $3,043.42, being the share of the estate adjudged to her by the said judgment of distribution in the county court, together with the $300 family allowance and $750 widow's share. From this judgment Teresa Paul and the Western Surety Company appealed and asked trial de novo to the circuit court, on both questions of law and fact, and in such notice of appeal specifically requested the appellate court to vacate the order of the county court refusing to sustain appellants' motion to dismiss the said petition of Peter Paul. Upon the trial de novo in the circuit court, the respondents, over objections, introduced evidence tending to show that a judgment of divorce between Albine and Teresa Paul had been rendered in the state of Michigan in 1902, at a time when both were residents of that state; and that in 1909 said Teresa Paul had been married to one Penzine, whose wife she was at the time of the death of said Albine Paul. The circuit court made findings and rendered judgment in favor of the said petitioner, from which judgment the said Teresa Paul and the Western Surety Company appeal.

[1] It is first contended by appellants that the county court was without jurisdiction to entertain the petition of Peter Paul filed some three years after the estate was closed; that the appointment of Teresa Paul as administrator, and all subsequent proceedings, having been passed upon and adjusted by the county court, such judgments, including the final decree of distribution, were conclusive, subject only to the right of appeal. We are of the view that this contention is not well grounded. It seems to

be generally held that courts of record, such as probate and county courts, have inherent power, independent of statute, to vacate their own judgments that have been procured by extrinsic fraud and imposition upon the court. Gilbreath v. Teufel, 15 N. D. 152, 107 N. W. 49; Baker v. O'Riordan, 65 Cal. 368, 4 Pac. 232; Bacon v. Bacon, 150 Cal. 477, 89 Pac. 317. In this last cited case it is held that the provisions of the Probate Code of California, identical with section 308 of the Probate Code of this State, providing that a decree of distribution is conclusive as to the rights of heirs, subject only to be reversed, set aside, or modified on appeal, has no application to a proceeding to vacate a decree of distribution on the ground of fraud or mistake.

[2] It is also contended by appellants that there is no evidence that the Michigan court had jurisdiction to render the decree in divorce offered in evidence by the respondent. The said judgment, a certified copy of which was offered in evidence, purports to be a judgment of the circuit court in and for the county of Houghton, state of Michigan, rendered on the 29th day of May, 1902, in an action wherein Albino Paoli was complainant and one Tesesa Paoli was defendant, and that said court was presided over by Hon. Albert T. Streeter, circuit judge of said court, and that a decree of divorce was granted thereby to the said Albino Paoli, the plaintiff, and that he was granted the custody and maintenance of the minor children, Louis, Peter, Joseph, and Charles Paoli, and which judgment was countersigned by the clerk of said court. It is contended by the appellant that no service of process is shown to have been made upon the defendant in said divorce action. We are of the view, and it seems to be generally held, that, when a certified copy of a judgment of record of a court of general jurisdiction of a sister state is offered in evidence, in the absence of evidence to the contrary, it will always be presumed that such court rendering such judgment had jurisdiction of the subject-matter and parties; that a court of a sister state presided over by a judge and having a clerk and other court officers will be presumed to be a court of record and of general jurisdiction. 23 Cyc. 1577; Van Norman v. Gordon, 172 Mass. 576, 53 N. E. 267, 44 L. R. A. 840, 70 Am. St. Rep. 304; Colins v. Maude, 144 Cal. 289, 77 Pac. 945; Cummins v. O'Brien, 122 Cal. 204, 54 Pac. 742; Glos v. Sankey, 148

Ill. 536, 36 N. E. 628, 23 L. R. A. 665, 39 Am. St. Rep. 196; Bailey v. Martin, 119 Ind. 103, 21 N. E. 346; Westervelt v. Jones, 5 Kan. App. 35, 47 Pac. 322; Smith v. Cent. Trust Co., 154 N. Y. 333, 48 N. E. 553; Trowbridge v. Spinning, 23 Wash. 48, 62 Pac. 125, 54 L. R. A. 204, 83 Am. St. Rep. 806; Black on Judgments, 886. Giving effect to the presumption that the circuit court of Michigan rendering said decree in divorce had jurisdiction of the subject- matter and parties, the burden was upon appellant to show the lack of service of process, if such was the case.

[3] Appellant also contends that there is no evidence that Albino Paoli and Teresa Paoli mentioned in said decree of divorce are the same persons as Albino Paul, the father of respondent, and Teresa Paul, one of appellants. We are of the view that this contention is not tenable. The respondent, Peter Paul, testified that his father and mother were Austrians, and that Paoli was the Austrian name for Paul, and that they were the same parties who were parties to the divorce action. The fact that the names of the children mentioned in the decree of divorce are identical with the names of the children of the deceased, Albine Paul, strongly tends to identify Albine and Albino Paoli as one and the same person.

[4] Appellant also contends that there is no evidence that Teresa Paul was married to one Penzine in the state of Colorado, in the year 1909. We are of the view that this contention is also untenable. Respondent offered in evidence a duly certified copy of the certificate of marriage, and also undisputed evidence that, after the said marriage with said Penzine, the said Teresa resided and lived with him as his wife. The record shows that Teresa Paul and Penzine were again married in 1912, but we are of the view that that marriage was an afterthought and a fraud.

[5] It is also contended by appellants that no extrinsic fraud has been shown to exist such as would warrant the setting aside of the decree of distribution. We are of the view that this contention is also not well grounded. It seems to be generally held that the fraudulent concealment of facts which would have caused the judgment or decree not to have been rendered will constitute extrinsic fraud sufficient to authorize the court, upon the

discovery of the fraud, or when such fraud is called to the attention of the court, to vacate such judgment 'or decree. Silva v. Santos, 138 Cal. 536, 71 Pac. 703; Aldrich v. Barton, 138 Cal. 220, 71 Pac. 169, 94 Am. St. Rep. 43; Sohler v. Sohler, 135 Cal. 323, 67 Pac. 282, 87 Am. St. Rep. 98. In the last cited case, the facts in principle were very similar to those in this case. There the mother of certain children conspired to procure a portion of the estate of her lately deceased husband for another child of a former husband, representing that the said other child was an heir of her late husband. This was held to be extrinsic fraud and concealment of the fact that this other child was not an heir. The filing of a fraudulent petition for administration is extrinsic fraud, taking the case out of the rule announced in Pico v. Cohn, 91 Cal. 129, 25 Pac. 970, 27 Pac. 537, 13 L. R. A. 336, 25 Am. St. Rep. 159, and U. S. v. Throckmorton, 98 U. S. 65, 25 L. Ed. 93; Bergin v. Haight, 99 Cal. 52, 33 Pac. 760. In the case of Flood v. Templeton, 152 Cal. 148, 92 Pac. 78, 13 L. R. A. (N. S.) 584, the rule laid down in the Throckmorton Case is thoroughly discussed and distinguished therefrom for the reason that the record disclosed that there was no contest of the issues on which the judgment sought to be vacated was based, and that the fraud of the parties prevented such a contest. The record in this case discloses that the respondent is uneducated, with no, or but little, knowedge of court procedure in this country, and that during the time the said estate was in process of administration, he made inquiries of the appellant Teresa Paul and her attorney who represented her in said proceeding, and was informed that his mother already had everything fixed and had already got the property, and that he would get what was coming to him. It also appears that respondent was not in Deadwood at the time of his father's death. It also appears that Joseph and Charles Paul were both minors at the time of their father's death and had not reached majority when these proceedings for relief were begun, both of whom have joined with the respondent in this proceeding.

[6] We are also of the view that, where a judgment or decree has been procured through and is the result of extrinsic fraud practiced upon the court, such judgment or decree may thereafter, at any time, he vacated and set aside as wholly void, and that, where there are no intervening rights of innocent parties con-

cerned, the equitable rules of estoppel have no application thereto. We are also of the view that under the circumstances of this case the petitioner and his minor brothers were not estopped from maintaining the procedure by which the said decree of distribution was vacated. It is due, however, to the attorneys who represented the appellant Teresa Paul, to state that the record does not disclose that any of said attorneys were cognizant of the extrinsic fraud practiced upon the court prior to or at the time of the entry of said decree of distribution.

All assignments of error have been considered.

Finding no error in the record, the judgment and order appealed from are affirmed.