Oswald GOETZ, Plaintiff and Appellant,

v.

Tony GUNSCH, Defendant and Respondent.

No. 7635.

Supreme Court of North Dakota.

Dec. 19, 1956.

Rehearing Denied Feb. 7, 1957.

J. K. Murray, Bismarck, for plaintiff and appellant.

Floyd B. Sperry, Golden Valley, for defendant and respondent.

JOHNSON, Judge.

This is an appeal from an order opening and vacating the judgment entered against the defendant in this action on July 12, 1955, for $6,555.51. This action arises out of what has come to be known as "the Gunsch litigation". The main case of several involved in that litigation is Gunsch v. Gunsch, N.D., 67 N.W.2d 311, and concluded after remand in Gunsch v. Gunsch, N.D., 73 N.W.2d 345. It is apparent from the record that when judgment was entered by the trial court in this action, the court was under misapprehension as to the guardianship status of the defendant, Tony Gunsch.

At the commencement of this action, the defendant was an inmate of the State Hospital at Jamestown, North Dakota. The summons and complaint were sent to the State Hospital together with the garnishment proceedings thereto attached and served upon Tony Gunsch and also upon Dr. John G. Freeman, Assistant Superintendent of the State Hospital. The plaintiff apparently did not feel that he could rely on this type of service, and a petition was presented to the District Court of Burleigh County, in which the action was brought, to appoint a guardian ad litem for "insane defendant". The petition was signed by David Gunsch, as petitioner, father of the defendant, Tony Gunsch. He states:

"That the said Tony Gunsch, the above named defendant, is an insane person, or mentally incompetent, and totally incapable of conducting the defense of said action and said garnishment action; and that he is of the age of approximately 37 years, *and has no legal general guardian.* * * *"

The petition was noticed for hearing before the court on the 27th day of May 1955. On that day, the court, by written order appointed Joseph Coghlan as guardian ad litem of Tony Gunsch to appear for and defend said Tony Gunsch in the above action. Mr. Coghlan had previously consented to act as guardian ad litem. Thereafter copy of the order appointing guardian ad litem was mailed to Mr. Tony Gunsch, care of Arthur Roe, Buchanan, North Dakota. Mr. Coghlan, as guardian ad litem, and also as attorney for the defendant, served and filed an answer in the action. He stipulated for its trial without a jury before the court on the 1st day of July 1955. The action generally involved some alleged claims that Dan and John Gunsch asserted that they have coming from the defendant and which they had assigned to the plaintiff, their brother-in-law. The action came on for trial before the court on the date set and subsequently the court entered judgment for the amount heretofore stated. Mr. Coghlan called no witnesses. He conducted no defense of the action except to briefly cross-examine the plaintiff's witnesses. During the trial, the court asked, referring to Tony Gunsch:

"Has he a general guardian yet?

"Mr. Coghlan: No."

Mr. Murray was present when this took place and he remarked:

"Of course, he is out on parole under the supervision of a Seventh Day Adventist minister. He got out two or three weeks ago."

A general guardian had been appointed in Mercer County, for Tony Gunsch, the county of his residence. Both the plaintiff and his attorney were aware of this fact. A demand for copies of the summons and complaint in this action had been served upon the attorney for the plaintiff some three weeks before the trial of this action. This demand was made on behalf of Albert Bauman, guardian of the estate of Tony Gunsch, and was signed by his attorney. So for at least three weeks prior to the trial of the action, the plaintiff and his attorney had actual notice of the claim that there was a general guardian of the estate of Tony Gunsch.

Other facts indicate knowledge of the appointment of a general guardian of the estate of Tony Gunsch. The petition for the appointment of the guardian ad litem, dated May 17, 1955, represents that Tony Gunsch has no "legal general guardian". From this statement an inference may be drawn of some knowledge of the appointment of a general guardian while at the same time it imputes invalidity thereto. Albert Bauman, one of the county commissioners of Mercer County, North Dakota, the county of the legal residence of Tony Gunsch, had been appointed as general guardian of his estate on January 25, 1955, and letters of guardianship were issued to him on February 8, 1955. Furthermore, it appears that an action had been instituted by the Mercer County authorities on behalf of the county and also on behalf of David, John and Dan Gunsch, to set aside the letters of guardianship issued to Albert Bauman. By written order, the court on June 11, 1955, refused to do so. It is to be noted that Dan and John Gunsch are brothers of the defendant; that David Gunsch is his father; and that the plaintiff is his brother-in-law. There can be no question that some considerable time before the action came to trial they had knowledge of the appointment of a general guardian for the estate of Tony Gunsch, Mercer County, North Dakota.

The defendant, by and through Albert Bauman, the general guardian of his estate, presumably under the provisions of Section 28–2901 NDRC 1943, noticed and served a motion together with affidavits and a proposed answer to open up and vacate the judgment. The District Court granted the motion to open and vacate the judgment. The plaintiff appeals from that order, specifying that the court erred in granting the order and revoking the appointment of the guardian ad litem which was included in and made a part of the order.

The first question for our determination is whether or not the court had the power and authority to appoint a guardian ad litem for the defendant in this action, he already having had a general guardian of his estate appointed in the county of his residence. The court had no knowledge of that fact, but the plaintiff did. He failed to disclose the true situation to the court upon inquiry. That prompts the further inquiry whether the failure to disclose this fact to the trial court constitutes extrinsic fraud, which under the circumstances, permits the court to open and vacate the judgment when called to its attention.

It is strenuously argued that the court has the right to appoint a guardian ad litem to serve for a party in an action despite the fact that a guardian of the estate of such party has been appointed.

"Appointment of Guardian Ad Litem For Person of Unsound Mind. When the defendant, at the time the action is commenced, is a person of unsound mind, and no guardian of his person or estate has been appointed, the court shall appoint a guardian for him for the purposes of the action. * * *" Section 28–0304 NDRC 1943.

At the time an attempt was made to serve Tony Gunsch at the State Hospital on February 16, 1955, he was an inmate thereof. The District Court may appoint a guardian ad litem for a defendant only when no guardian has been appointed of his person or estate. That is clearly the meaning of the statute.

■ If a defendant in a civil action has been judicially adjudicated incompetent and a guardian of his person or estate has been appointed, in this state, the summons shall be served upon such guardian. Section 28–0603 NDRC 1943. There would be no purpose in appointing a guardian ad litem for an incompetent person whose estate is already under general guardianship, since service of summons in a civil action against the incompetent, pursuant to the statute, must be made upon the guardian of his person or estate. In jurisdictions where statutes have been enacted which prescribe a method for service of process upon an incompetent, the requirements of such statutes must be observed, else the service will be vulnerable to proper attack upon it. 28 Am.Jur., Process, Section 112, page 743. The guardian had the power, and it is his duty, if he has the requisite means to provide for the defense of any action against his ward so far as is necessary for the protection of the latter's person or property and has authority to authorize the right of appeal from a judgment which injuriously affects the interest of his ward. 25 Am.Jur., Defense of Suit by Guardian, Section 154, page 96.

■ It must be presumed · that the jurisdictional facts existed with reference to the incompetency of the defendant, Tony Gunsch, and that they were established to the satisfaction of the county court of Mercer County upon the appointment of the guardian of his estate. The county court may appoint a guardian, if the jurisdictional facts exist, of the person or estate, or both, of a person

residing in the state who is a person of unsound mind, or from any cause mentally or otherwise incompetent to manage his own property. Section 30–1002 NDRC 1943. See also Section 30–1005 NDRC 1943. The presumption of incapacity prevails in absence of a showing of restoration to capacity. Section 30–1020 NDRC 1943. Tony Gunsch had been judicially declared an incompetent person prior to the commencement of this action.

The appellant, however, contends that the appointment of a guardian ad litem was valid under the provisions of Section 30–1024 NDRC 1943, which declares:

"No provisions contained in this chapter affect or impair the power of any court to appoint a guardian to defend the rights or interests of any minor, incompetent * * *."

■ All this section means is that provisions of the probate court for the appointment of a guardian do not affect or impair the power of the district court to appoint a guardian, in a proper case, to defend the rights or interests of persons therein mentioned. In other words this provision indicates that it was not the intent that resort must be had to the county court for the appointment of a guardian to defend the interests of parties mentioned in the statute, where no general guardian has been appointed. But where a general guardian has been appointed by a county court there is no need to appoint a guardian ad litem for a defendant under Section 28–0304 NDRC 1943. There is a guardian already charged with the duty to protect his ward or his estate. Under the statute, the trial court has no authority to appoint a guardian ad litem for a defendant who has a general guardian of his estate.

■ The appellant contends that the procedure used by the defendant to procure the order opening and vacating the judgment in this action, is not only insufficient in content to meet the requirements

of the adjudicated cases, but that it is not applicable as the judgment here involved is not a default judgment. It is only where a defendant fails to answer or demur to the complaint within the time prescribed by law, upon proof of such default by the affidavit of the plaintiff or his attorney, that the court may render a judgment in favor of the plaintiff. A judgment thus obtained is known as "Judgment on Default." Section 28-0902 NDRC 1943. In a strict sense a default judgment is one taken against a defendant who, having been duly summoned in an action, fails to enter an appearance in time. Where issues of fact have been joined, judgment thereon, although defendant does not appear at the trial, is not a judgment by default, nor is it a judgment by default where defendant appears, is present at the final hearing and joins in submitting the cause to the court. 49 C.J.S., Judgments, § 187, Judgment by Default, p. 325; Chivers v. Johnston County, 62 Okl. 2, 161 P. 822, L.R.A.1917B, 1296.

Here the defendant through his alleged guardian ad litem, appeared, answered and participated in the trial of the action resulting in the judgment. In its true sense, therefore, the judgment in the instant case cannot be said to be one obtained by default.

■ Section 28-2901 NDRC 1943 has no application in this case. The judgment taken against the defendant under the circumstances set forth in the record before us, was obtained through extrinsic fraud and is subject to attack for that reason.

■ Courts of general jurisdiction have inherent power, independent of any statutory provisions, to set aside and annul any judgment or decree procured by fraud and deceit by the successful party practiced upon the complaining party to the action and the court. Yorke v. Yorke, 3 N.D. 343, 55 N.W. 1095; Gilbreath v. Teufel, 15 N.D. 152, 107 N.W.

49; Lamb v. King, 70 N.D. 469, 296 N.W. 185; Rykowsky v. Bentz, 45 N.D. 499, 178 N.W. 284.

"The rule supported by the overwhelming weight of authority is that fraud as a ground for vacating a judgment 'must be what is known as "extrinsic" fraud, that is, fraud in the means whereby the judgment was procured, and not fraud in the cause of action or matter put in issue and presented for adjudication.' 1 Freeman on Judgments, 5th Ed., pp. 461, 462; 31 Am.Jur., pp. 230, 231." Jacobson v. Brey, 72 N.D. 269, 6 N.W. 2d 269, 273; Schillerstrom v. Schillerstrom, 75 N.D. 667, 32 N.W.2d 106, 2 A.L.R.2d 271.

In the case at bar David Gunsch had represented to the court by petition for appointment of guardian ad litem that the defendant, his son, was incompetent, insane, and unable to manage his own affairs; that he had no "legal general guardian". He had knowledge of the appointment of Albert Bauman as general guardian of the estate of his son, Tony Gunsch. If the plaintiff and his attorney did not know of the appointment of the general guardian of the estate of Tony Gunsch at the time of the commencement of this action, they were informed of that fact by the demand made by the guardian for a copy of the summons and complaint in the action. The trial court was informed at the time the action was before it that Tony Gunsch had no general guardian. The attorney for the appellant was present when this statement was made and yet he made no comment or statement to the court concerning the matter. These circumstances clearly constitute extrinsic fraud upon the court.

"It seems to be generally held that the fraudulent concealment of facts which would have caused the judgment or decree not to have been rendered will constitute extrinsic fraud sufficient to authorize the court, upon

the discovery of the fraud, or when such fraud is called to the attention of the court, to vacate such judgment or decree. Silva v. Santos, 138 Cal. 536, 71 P. 703; Aldrich v. Barton, 138 Cal. 220, 71 P. 169, 94 Am.St.Rep. 43; Sohler v. Sohler, 135 Cal. 323, 67 P. 282, 87 Am.St.Rep. 98." Paul v. Paul, 41 S.D. 383, 170 N.W. 658, 660. See also 49 C.J.S., Judgments, § 265, Opening and Vacating, p. 478.

In the case of Steinmueller v. Liebold, 43 N.D. 460, 175 N.W. 729, it was held that where a trial court made a mistake in signing an order for judgment, which was contrary to the facts in the case, it could, upon the mistake being called to its attention, correct its records so as to conform to the facts, and this, upon its own motion, under and by virtue of its inherent powers. The court may vacate a clearly fraudulent judgment on its own motion. Davidson v. Ream, 175 App.Div. 760, 162 N.Y.S. 375. Whether the moving papers in this action are sufficient, becomes wholly immaterial. It may be that they did not constitute the kind of notice which would be required in some cases. But the court had the power to act without any notice and whatever notice the plaintiff received was more than he was entitled to demand as a matter of right. On discovery of the fraud involved, or when the fraud was called to the attention of the court, as it was in the moving papers, by facts that clearly show that extrinsic fraud was practiced, the court had the authority and the power to vacate the judgment. Paul v. Paul, 41 S.D. 383, 170 N.W. 658. There can be no doubt that if the court had been informed of the appointment of the general guardian of the estate of Tony Gunsch, an incompetent, it would have ordered such guardian served pursuant to the statute, and would have deferred the trial until the guardian was in default or was properly in court. That must have been the purpose of the inquiry made by the trial court. The maxim "that fraud vitiates everything" is applicable to judgments. 1 Freeman on Judgments, 5th Ed., Section 232, p. 460.

The order of the trial court is affirmed.

BURKE, C. J., and SATHRE, MORRIS and GRIMSON, JJ., concur.