MARTIN RYKOWSKY, Respondent, v. GEORGE BENTZ, Appellant.

(178 N. W. 284.)

**Judgment — district courts have inherent power to vacate fraudulent judgments.**

1. An application to set aside a judgment obtained by means of fraudulent acts on the part of the plaintiff is not controlled by § 7483, Comp. Laws 1913. The district courts have inherent power to vacate fraudulent judgments.

**Judgment — default obtained by false statements held to require vacation.**

2. For reasons stated in the opinion, it is *held* that defendant's motion to vacate a default judgment in this case should have been granted.

Opinion filed June 14, 1920.

From an order of the District Court of Grant County, *Hanley*, J., defendant appeals.

Reversed.

*Jacobson & Murray*, for appellant.

The order denying the motion to vacate should be reversed and the judgment should be vacated. Whittaker v. Warren (S. D.) 86 N. W.

638; Williams v. Fairmont School Dist. 21 N. D. 198; Mougey v. Miller (N. D.) 169 N. W. 735.

*E. T. Burke,* for respondent.

CHRISTIANSON, Ch. J. This is an appeal from an order of the District court of Grant county, denying an application made by the defendant, George Bentz, to vacate a default judgment rendered against him on the 21st day of July, 1917, and allowing him to answer the complaint of the plaintiff.

The complaint in this action alleges that the defendant wilfully, wrongfully, maliciously, and unlawfully shot and wounded three horses belonging to the plaintiff, with the intent to vex, annoy, and harm the plaintiff; that the plaintiff has demanded of the defendant settlement for the damages occasioned by said shooting, but that defendant has refused to settle the same, to plaintiff's damages in the sum of $275, wherefore plaintiff demands judgment for treble damages as provided by § 10,050, Comp. Laws 1913. The summons and complaint were served March 28, 1917; on June 11, 1917, plaintiff's attorney made affidavit of default, and judgment by default was entered on the 21st day of July, 1917. On the 15th day of September, 1919, the defendant made an application to open the default. The application was supported by affidavits and a verified answer. In his affidavit defendant averred, among other things, "that the following are the facts in connection with the procuring of said judgment: That in the month of January, 1917, the said plaintiff fraudulently and falsely claimed and pretended that this defendant shot and killed three of his horses, and claimed to have several witnesses who could prove it, and further falsely and fraudulently claimed that he could recover big damages against this defendant, and that said horses were shot in the year 1915; that at said time this defendant did not have any witnesses, except himself, to prove otherwise; that the said plaintiff, at that time, offered to settle with this defendant for the sum of $100 in full for said horses; that this defendant, believing and figuring it would cost him more than $100 to defend the action, and for the purpose of saving trouble and expense to himself in so defending, accepted said plaintiff's offer of settlement of $100, and pursuant to such settlement did then and there, on the 29th day of February, 1917, pay to the plaintiff the sum of

$100 in the form of a check, bearing date the 27th day of February, 1917, which check is hereto attached and marked exhibit A; that this defendant did then and there verily believe that such was the end of plaintiff's claim; that prior to this time the said claim had been in the hands of one (———), attorney, for collection; that thereafter and on the 28th day of March, 1917, a summons and complaint in the above-entitled action was served upon this defendant by one G. E. Berg; that then and there, and on the same day, this defendant went and saw the plaintiff, Martin Rykowsky, and asked him why he was suing him on said claim when it was settled, and the said Rykowsky then and there informed this affiant that such was the fault of the said (plaintiff's) attorney (———), that he has forgotten to communicate to him, the said [plaintiff's attorney], the fact that the case was settled, but that he would see him right away and have the case dismissed; that the said [plaintiff's attorney] had no authority to start said action, and then and there informed this affiant that he could take his word for it that he would have [plaintiff's attorney] dismiss the said lawsuit; that shortly thereafter this defendant saw F. G. Boettcher, of Elgin, who this affiant believed was a lawyer, and showed the said papers to Boettcher, and told the said Boettcher about his interview and talk with the plaintiff Rykowsky, and that the said Rykowsky had promised to have [plaintiff's attorney] withdraw the action, and about his settlement with Rykowsky; that the said Boettcher then and there told this affiant to pay no attention to the papers, but to throw them away, that in view of the fact he had settled with Rykowsky, such was the end of it; that this affiant believed what the said Boettcher told him and paid no more attention to such summons and complaint." The affidavit further states that the defendant subsequently received by mail a certain paper from plaintiff's attorney; that he took such paper to Boettcher and was by him informed that it was a claim by said plaintiff's attorney for attorney's fees; that said Boettcher further stated that it was up to plaintiff to pay his attorney; that said defendant, relying on the information given by said Boettcher, thereupon threw said paper away and paid no further attention to it; that during all of said time the defendant could not read or write the English language,—nor can he do so at this time.

The plaintiff Rykowsky made an affidavit, wherein he says that on

June 8, 1916, he swore out a criminal complaint against the defendant Bentz, and had him arrested for shooting the horses; "that in the month of February, 1917, the defendant George Bentz offered the affiant $100 if he would drop it and refuse to prosecute said criminal case against him, the said defendant; that this affiant did accept the $100, and drop and refuse to prosecute said case any further, and so informed said state's attorney of Grant county, North Dakota, I. N. Steen, sometime before district court convened at Carson, North Dakota, in July, 1917. That the above-mentioned criminal case is the case settled and dropped between this affiant and George Bentz, and that the $100 were paid to and accepted by this affiant for dropping said criminal case against the defendant, and not for damages suffered by this affiant by reason of defendant's having shot affiant's three horses on November 30, 1915. That this affiant never agreed with George Bentz that said $100 should be reimbursed to him for any damages suffered by reason of the shooting of said horses."

It will be noted that plaintiff admits that he received $100 from defendant; but he claims that that sum was paid, not in settlement of plaintiff's claim for damages, but for a dismissal of the criminal action. The plaintiff does not, however, deny the statements in defendant's affidavit as to the conversation between the plaintiff and defendant after the summons and complaint had been served upon the defendant. Nor does he deny that in such conversation he told the defendant that the action had been commenced through the mistake of his attorney, and that he would inform said attorney that the matter had been settled, and see that the action was dismissed.

The plaintiff contends that the order appealed from must be affirmed:

(1) Because the application vacated was not made within one year after the defendant had notice of the judgment; and,

(2) That in any event, the granting or refusal of such application rested within the sound judicial discretion of the trial court, and that the order cannot be reversed unless the discretion has been abused.

Plaintiff rests his contentions upon the provisions of § 7483, Comp. Laws 1913, which provides, *inter alia,* that the court may "in its discretion and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order or other proceeding taken against him through his mistake, inadvertence,

surprise or excusable neglect." This section has no application to this case. The defendant, in his motion, did not ask to be relieved from a judgment taken against him through his mistake, inadvertence, surprise or excusable neglect, but he asked that a judgment taken against him through the fraudulent acts of the plaintiff be vacated and set aside. If the judgment was taken against the defendant under the circumstances set forth in his affidavit, it was obtained through fraud, and would be subject to attack for that reason. See Shary v. Eszlinger, ante, 133, 176 N. W. 938. The power to set aside judgments obtained by fraud is not dependent upon § 7483, supra, but is inherent in all courts of record. Black, Judgm. § 321; Williams v. Fairmount School Dist. 21 N. D. 198, 129 N. W. 1027; Whittaker v. Warren, 14 S. D. 611, 86 N. W. 638. Hence the district court had power to vacate the judgment, notwithstanding more than one year had elapsed after defendant had notice thereof.

In the case at bar, the defendant, in his affidavit, asserted that the plaintiff promised to notify his attorney that the matter had been settled and see that the action was dismissed. This portion of the defendant's affidavit is not denied in any affidavits submitted by the plaintiff. Upon the record as a whole, we believe defendant's motion should have been granted. The order appealed from must, therefore, be reversed. Such will be the order of this court.