ELEANOR H. DAVIDSON, Respondent, *v.* LOUIS M. REAM, Appellant.

Third Department, December 28, 1916.

Husband and wife — annulment of marriage — decree obtained by fraud and collusion — motion by plaintiff to set aside judgment in her favor — service of notice of motion upon attorney of record and upon defendant in foreign State — removal of defendant to foreign State does not deprive court of jurisdiction — power to vacate judgment obtained by fraud.

Where a plaintiff, in whose favor a decree has been granted by the courts of this State declaring her marriage to the defendant void, moves to vacate the judgment upon papers which indicate that the action was collusive and that the plaintiff was induced to prosecute the same by the procurement and connivance of the defendant, the latter, having appeared by his attorneys and defended the action, is not entitled to have the notice of motion which was served on his attorneys in the action and delivered to him personally in a foreign State set aside, either upon the theory that the court is without jurisdiction to set aside the fraudulent decree upon the ground that the defendant is a resident of a foreign State and was not personally served with a notice of motion within this State, or upon the ground that having paid and discharged his former attorneys, service of the notice upon them is not binding upon him.

The court will protect itself and those within its jurisdiction from frauds worked through abuse of its forms and process under the maxim that "an act of the court shall prejudice no man," and also under the maxim that "no man shall avail himself of his own wrong."

The defendant in the action of annulment, having alleged in his answer that he was a resident of this State and having voluntarily appeared in the action by his attorneys, cannot oust our courts of jurisdiction over its own judgment by leaving the State and claiming a foreign residence.

A person who by the aid of an attorney of this State has tricked the court into a fraudulent judgment cannot, by removing from the jurisdiction and discharging the attorney, divest the court of its power to undo the wrong, and the attorney remains as a hostage of the court to answer for the integrity of the judgment.

Power of the court to vacate a judgment obtained by fraud discussed, per WOODWARD, J.

APPEAL by the defendant, Louis M. Ream, appearing specially, from an order of the Supreme Court, made at the Saratoga Special Term and entered in the office of the clerk of the county of Rensselaer on the 10th day of April, 1916, as amended by an order entered in said clerk's office on the 1st day of May, 1916, denying his motion to set aside and hold for naught the service of a notice of motion to vacate a judgment in plaintiff's favor in a matrimonial action declaring her marriage to the defendant void.

*Arthur L. Andrews* [*Lindley M. Garrison* of counsel], for the appellant.

*Edgar T. Brackett*, for the respondent.

WOODWARD, J.:

On the 14th day of November, 1911, the plaintiff issued a summons, through her attorneys, Shaw, Bailey & Murphy, of Troy, N. Y., directed to the defendant, and on the same date the defendant's attorney in New York executed a notice of retainer and demanded "that a copy of the complaint and all papers in this action be served on me at my office," etc. The complaint was verified on the 16th day of November, 1911, and alleges that "on the evening of September 1st, 1911, the plaintiff and the defendant, who had known each other for only a short time, went to the city of Hoboken, in the State of New Jersey, where a form of a pretended ceremony of marriage between the plaintiff and the defendant was performed by a

person representing himself to be a justice of the peace of said city of Hoboken;" that "neither plaintiff nor defendant obtained a license to marry from the clerk or register of said city of Hoboken prior to said form of pretended ceremony of marriage," as required by law, "nor were they or either of them examined by said clerk or registrar as to their legal competency to marry and other matters specified in said laws, nor did they or either of them make affidavit before said clerk or registrar attesting the truth of the facts," etc.; that "said form of pretended ceremony of marriage was therefore unlawfully performed in contravention of said laws;" that "neither the plaintiff nor the defendant desired, intended or contemplated a common-law marriage and did not undertake, enter into or contract a common-law marriage; that the relations heretofore and presently existing between the plaintiff and defendant have not been such as to constitute a common-law marriage, and that no marriage, at common law or otherwise was ever consummated or exists between the plaintiff and the defendant;" that there is "no issue or possibility of issue of said form of pretended ceremony of marriage;" that "by reason of the aforesaid facts, and as this plaintiff is informed and verily believes, she is not the wife of said defendant, but is left in doubt and uncertainty as to her state and condition arising from said form of a pretended ceremony of marriage, and the only remedy or relief available to this plaintiff lies in appeal to this court to have the same declared void." This is followed by the allegation that the defendant has not procured a decree of divorce or annulment in any of the courts against the plaintiff, and that no other action has been commenced, and prays for judgment that the pretended ceremony of marriage between plaintiff and defendant to be ineffectual and void, and adjudging and determining that this plaintiff is not the wife of the defendant, and for such other and further relief in the premises as may be just and proper, together with her costs of this action.

The defendant obligingly admitted the 1st and 2d paragraphs of the complaint, that the parties "were and are now residents of the State of New York," and that the ceremony was performed in Hoboken on the date mentioned. He denies that he has any knowledge or information as to the matter

of procuring a license, except that he admits that he did not procure such a license, and that he was not examined and did not make an affidavit. He further admits the allegations, amounting merely to conclusions, that the parties did not desire, intend or contemplate a common-law marriage, "and did not undertake, enter into or contract a common-law marriage," but he does not deny the consummation of a common-law marriage, and it is significant that he denies on information and belief the allegation of the 6th paragraph of the complaint, in relation to issue, except that he admits "that there is no issue of said form of pretended ceremony of marriage."

These matters are, perhaps, unnecessary to be considered here, except for the purpose of indicating the uncanny character of the transaction, for we are concerned with the question of whether the defendant in that action, who now claims to be a resident of the State of Connecticut, is entitled to an order of this court holding that he is not called upon to respond to the plaintiff's motion to set aside the judgment in the action, on the grounds of lack of jurisdiction and fraud, because of the failure of the plaintiff to get personal service upon him within the State of New York. This alleged false marriage took place on the 1st day of September, 1911; the action was commenced on the 14th day of November, 1911, by a firm of lawyers in Troy, and on the very same day the defendant's attorney in the city of New York served a notice of retainer, and two days later the complaint was dated. In exactly two months from the date of the complaint a judgment was entered in Rensselaer county declaring the marriage void. Neither of the parties lived in Rensselaer county; both of them lived in or near the city of New York, and the course of the trial, the character of the pleadings, and the evidence introduced in support of the action, all indicate co-operation on the part of the defendant in procuring the judgment, and suggest that the court has merely been used to reach a result not justified in the law.

The plaintiff, who had judgment in that action, now appearing by a substituted attorney, has served a notice of motion upon the defendant's attorney in the action, and has placed a copy of that notice in the hands of the defendant within the

State of Massachusetts, and the latter comes into this court and moves for an order setting aside the attempted service of notice, on the grounds that the action having been finally determined, the time for appeal and for statutory interference having passed, and the defendant's attorney having been paid and discharged from further service, it is necessary to have personal service within the State of New York upon the defendant in order to get jurisdiction to set aside the judgment. The notice of motion which the plaintiff has sought to make effective by service upon the defendant personally without the State, and upon his attorney in the action, is supported by affidavits which indicate all too strongly that the courts of this State have been imposed upon in this action; that the judgment of nullity was secured practically upon the initiative of the defendant, whose attorney gave the plaintiff the sum of about $38,000 after the close of the litigation, though no mention of any financial matters was made in the pleadings or judgment. If the moving papers are true the defendant in this action entered into a marriage contract with the plaintiff in the State of New Jersey, came within the State of New York and consummated that marriage and held the plaintiff out as his wife to relatives and friends, and then betook himself to the State of Connecticut and, by means of false and fraudulent suggestions, induced the plaintiff to bring the action, appearing by his attorney and admitting the falsely induced allegations, and relieved himself of the responsibilities of the marriage obligations by a judgment of the courts of this State procured by means of these frauds upon the jurisdiction. Now, when the plaintiff awakens to the fact of the fraud, and finds herself still the lawful wife of the defendant — for fraud vitiates judgments as well as contracts — the defendant attempts to appear specially for the purpose of asserting that the court is without jurisdiction to purge its records of this fraud, because the defendant is a resident of the State of Connecticut, and because he has not been served personally within the State of New York. While it is conceded that the plaintiff has caused notice to be served upon the attorney in the action, it is insisted that this did not operate to reinstate the jurisdiction of the court, and if the

contention of the defendant is sound then all that is necessary is to get a judgment in form, withdraw from the jurisdiction, discharge the attorney of record, and not only the wronged party but the State itself, which is a silent third party in all contracts, is without remedy. We are persuaded that the contention cannot be sound; that the State is not so powerless to protect itself and those within its jurisdiction from frauds worked through abuse of its forms and process. One of the maxims of the common law is that "An act of the court shall prejudice no man" (Broom Leg. Max. [8th ed.] 101), and the text of the authority cited, after various illustrations, says: "The preceding examples will probably be sufficient to illustrate the general doctrine, which is equally founded on common sense and on authority, that the act of a Court of law shall prejudice no man; and in conformity with this doctrine it has been observed that as long as there remains a necessity, in any stage of the proceedings in an action, for an appeal to the authority of the Court or any occasion to call upon it to exercise its jurisdiction, the Court has, even if there has been some express arrangement between the parties, an undoubted right, and is, moreover, bound to interfere, if it perceives that its own process or jurisdiction is about to be used for purposes which are not consistent with justice." (*Wade* v. *Simeon*, 13 M. & W. 647; *Thomson* v. *Harding*, 3 C. B. [N. S.] 254; 91 E. C. L. R. 254; *Sherborn* v. *Lord Huntingtower*, 13 C. B. [N. S.] 742.) When, therefore, the act of the court, induced by fraud on the part of a party to an action, indicates clearly that the process and jurisdiction are being used for purposes inconsistent with justice, there can be no reasonable doubt that at common law the court would have the power, on its own motion, to set aside the judgment under which the wrong was attempted to be worked out.

The same doctrine arises out of the maxim that "An act in law shall prejudice no man," and Broom says that "where an authority given by law has been abused, the law places the party so abusing it in the same situation as if he had, in the first instance, acted wholly without authority (6 Bacon's Abridgement, 559; *Six Carpenters Case*, 8 Rep. 290), and this, it has been observed, is a salutary and just principle, founded on the

maxim that the law wrongs no man." (Broom Leg. Max. [8th Am. ed.] 126.) And the same doctrine is deducible from the maxim that no man shall avail himself of his own wrong. "We do not in this treatise purpose to consider in what manner a court of equity will deal with fraud, or how, if fraud be proved, it will interfere to give relief; but we may state the principle which is by all courts invariably acted upon to be that the author of wrong, who has put a person in a position in which he had no right to put him, shall not take advantage of his own illegal act, or, in other words, shall not avail himself of his own wrong." (Broom Leg. Max. [8th ed.] 287.)

The record in this action shows that the defendant alleged in his answer that he was a resident of the State of New York; that he appeared by his attorney, who served a notice of retainer, demanding that "all papers in this action be served on me," and by this constituted a voluntary general appearance in the action. (*Reed* v. *Chilson*, 142 N. Y. 152, 155.) The court had jurisdiction of the subject-matter and of the parties, and it had jurisdiction of the judgment rendered in that action. The defendant after the judgment was entered paid the costs, and, we will assume, discharged his attorney upon paying his compensation, but he could not by leaving the State of New York oust the jurisdiction of the court over its own judgment. He might, as between himself and the plaintiff, perhaps terminate the action, assuming them to have both been parties to the fraud, but he could not by any act on his part make valid a judgment which was contrary to public morals or sound public policy. (*Mayor, etc.,* v. *Manhattan R. Co.,* 143 N. Y. 1, 26, and authorities there cited; *Veazey* v. *Allen,* 173 id. 359, 368.) When the defendant appeared generally in the action, through his attorney, he gave the court jurisdiction of that action in all its phases; gave the court authority to make and enter judgment, and the court never loses jurisdiction of its judgments, nor can the attorney, as the officer of the court, sever his relations with the client in such a manner as to deprive the court of the power to purge its records where it is made to appear that fraud has been perpetrated upon the court.

Of course, in the original action, it is necessary to get personal service upon a defendant. When a party does not intend

to subject himself to the jurisdiction of the court he may appear specially for the purpose of raising the question of jurisdiction by motion, or he may allow the plaintiff to go on and take judgment by default without affecting his rights, since no judgment entered without service of process in some form could bind the defendant, and the question of jurisdiction would protect him at any stage of the proceeding for its enforcement, provided it has not been waived by his own act. But if the defendant elects to come before the court and there try the questions, he cannot afterwards deny the jurisdiction or be heard to claim that it was not a voluntary appearance. (*Reed v. Chilson, supra,* 155.) The act of employing counsel and having the counsel appear and demand all of the papers in the action, constituting, as it does, a general appearance, that appearance attaches to the judgment, and to all acts and proceedings in relation to that judgment, unless there has been a substitution of attorneys in the regular way; that is the guaranty the court has of the integrity of its adjudications. It seems to us entirely clear that the client in the employing of an attorney impliedly contracts for the services of that attorney to the close of a litigation conducted fairly and in good faith, and that he cannot, by the aid of an attorney, trick the court into a fraudulent judgment and then by removing from the jurisdiction deny to the court the power to undo the wrong. The attorney, as an officer of the court, remains within the jurisdiction; he is here as the hostage of the court to answer for the integrity of the judgment, even though as between the attorney and client the relation may have ceased.

Were this doubtful, the case at bar does not present any substantial difficulty. That the court had jurisdiction of the defendant by reason of the notice of retainer cannot be questioned, and it can hardly be doubted that where, in a motion in the original action, the defendant attempts to appear specially to question the jurisdiction of his person, he is in the position of asking for relief in the action, and his so-called special appearance is of no avail. By his affirmative act in invoking the power of the court in an action in which he has made a general appearance, he necessarily admits the existence of the action, and if the court has power to grant his motion to declare

the notice void it has equal power to refuse to do so, and the defendant is in court under its original general jurisdiction. (See 2 Ency. Pl. & Pr. 625.)

The order appealed from should be affirmed.

All concurred, COCHRANE, J., in opinion.

COCHRANE, J. (concurring):

This being a matrimonial action involving as it does the rights and interests of the public, and facts having been brought to the attention of the court, indicating that it had been overreached and imposed upon and induced by fraud and collusion to render a judgment inimical to the rights of the State and contrary to its public policy, the duty rested on the court on its own motion to set the judgment aside, not necessarily for the benefit of the plaintiff, but in the interest of the common weal. In my opinion the court had power to enter an order vacating such judgment without notice to the defendant. How otherwise could the court get rid of a fraudulent and collusive judgment in an action of this nature, where the collusion of the parties continued after the fraud and collusion became apparent to the court, and neither party was willing to take the initiative in righting the wrong which had been committed? Doubtless in such a case it would be more expedient and cautious for the court to cause some notice of its anticipated action to be given to the interested parties, but cases arise where it is difficult if not impossible to give notice. Is the court powerless in such a case? Applying the preceding observations to the present case it appears that on the presentation to the court of the facts contained in the plaintiff's moving papers it became apparent to the court that it had been made the instrument of fraud. Instead of vacating the fraudulent judgment *ex parte* as the court had the power to do, notice was given to the defendant. It may be that it was not the kind of notice which would be required in some cases, but the court had power to act without any notice, and whatever notice the defendant received, poor though it may have been, was more than he was entitled to demand as a matter of right. He is charged with having fraudulently misled the court into making a judgment in which not only the parties to the action

but the State at large is interested, and in the interests of the State at large the court is not required to look with folded arms at a judgment fraudulently procured because one of the parties who fraudulently procured that judgment thinks he has not had sufficient notice of his own fraud. The point that the question can only be raised by an action and not by motion ignores the duty of the court to act on its own initiative in the interest of the public, regardless of the attitude of either party. The court would be remiss in its duty if it waited for one of the parties to bring an action which might never be brought. Whether the court properly concluded that the judgment was fraudulent is a question not here involved, but for the purposes of the present appeal from the order now before us such fact must be assumed.

Order affirmed, with ten dollars costs and disbursements.