128 So.2d 725

John **HARTIGAN**

v.

Helen Anderson **HARTIGAN.**

6 Div. 643.

Supreme Court of Alabama.

March 30, 1961.

Huey & Tyrrell and J. Terry Huffstutler, Birmingham, and Jack Crenshaw, Montgomery, for appellant.

69

No attorney marked for appellee.

Paul Johnston, Birmingham, for Geo. Lewis Bailes, amicus curiae.

MERRILL, Justice.

Appellant seeks a review of an order vacating an original divorce decree rendered in 1954, which was made by the trial court in 1960 in a proceeding to modify alimony payments included in the original decree. Appellant was uncertain as to whether mandamus was the proper mode of securing a review, and has presented this case here on petition for mandamus or in the alternative by appeal.

On July 28, 1954, Helen Hartigan filed a bill for divorce in the circuit court charging her husband, John Hartigan, with voluntary abandonment. She alleged in the complaint that she was a bona fide resident citizen of Birmingham, Jefferson County, Alabama, and had been for more than one year next preceding the filing of the bill, and that the respondent was a resident of Jefferson County, Alabama.

The respondent, appellant in this proceeding, filed an answer and waiver in which he admitted the jurisdictional facts but denied the other material allegations of complainant, and agreed that the case "may be carried forward to its final determination and decree of divorce issued without other notice to respondent." He signed the answer and waiver in the presence of a witness.

An agreement between complainant and respondent, purported to have been signed by both parties on July 28, 1954, was filed with the complaint and answer, under the terms of which, respondent agreed to pay the complainant alimony of $60 per week and retain her as beneficiary of a $5,000 life insurance policy on his life, both conditioned on her remarriage. The complainant prayed that the agreement be incorporated in the divorce decree.

In her deposition, the complainant swore that she was a bona fide resident of Birmingham and had been for more than a year; that she lived at 247 Kent Drive in Birmingham and that respondent was a resident citizen of this county and state. Her deposition was supported by a deposition of one Hazel Daniels, who swore that she knew both parties, that they were resident citizens of Birmingham, Jefferson County, Alabama; that complainant resided at 247 Kent Drive and that respondent was in the western part of the city, the exact address being unknown. A decree of divorce incorporating the property settlement was entered on July 28, 1954.

On June 17, 1960, Hartigan filed a petition in the Circuit Court of Jefferson County praying for a modification of the 1954 divorce decree so as to eliminate the requirement that he pay Mrs. Hartigan alimony of $60 per week. He averred certain financial grounds as changed circumstances.

On July 7 and 8, 1960, Mrs. Hartigan filed an answer asking enforcement of the decree, a petition to modify the decree to require Hartigan to pay the income·taxes on the alimony which she had received from him, a petition for citation of contempt on the ground that he was delinquent on his alimony payments, and a petition for allowance of her solicitor's fees.

The cause was heard before Judge Bailes on July 14, 1960. Both parties were represented by local counsel and, in addition, Mrs. Hartigan was represented by a New York attorney. We quote from Judge Bailes' answer to the petition for mandamus:

"* * * Considerable discussion between the parties took place 'off the record' during the forenoon of July 14th. During the course of this informal conference it became evident to Circuit Judge that neither of the Hartigans had ever been a bona fide resident citizen of Alabama, either before, at the time of, or subsequent to the rendition of the 1954 decree of divorce. At this stage of the off-the-record discussions Mrs. Hartigan's local counsel withdrew from the case and her interests in the matter were thereafter represented by Mr. Gluckman."

Hartigan's attorney sought leave of court to withdraw from the case and the permission was granted but the counsel remained in the courtroom during the proceedings. (We note that this attorney was designated to receive whatever decree the court might render, signed the motion for a new trial, signed the security for costs on appeal to this court, and is one of the attorneys on brief.) Both counsel and Hartigan asked for a continuance of the hearing but the requests were overruled.

The following facts were then established without objection:

Mrs. Hartigan came to Birmingham by plane from New York on July 28, 1954. She had been driven to the New York airport by Hartigan, who had provided plane tickets for her trip to Birmingham and return. When she arrived in Birmingham, she went to the office of a Birmingham attorney, now deceased, who had been chosen by Hartigan and he was Hartigan's attorney. She signed the complaint, the property settlement agreement and her deposition. After a period of some four or five hours, she returned to New York by plane. She received a copy of the divorce decree some days later.

Mrs. Hartigan testified that she had never resided in Alabama and had never

been in Alabama before July 28, 1954; that she never resided at 247 Kent Drive, that Hartigan had never lived in Alabama or in the western part of Birmingham; that her trip to Alabama had been agreed upon between her and her husband in New York; that she came to Alabama to get the divorce, and that she had been represented by counsel in New York City, who had approved the plans for the Alabama divorce..

On the following day, July 15, 1960, Judge Bailes on his own motion entered a decree setting aside the 1954 final decree of divorce on the ground that it was procured by fraud on the court, was illegal, null and void, and dismissed the petitions of both parties. A motion for a new trial was filed on behalf of Hartigan which was overruled.

This case is the first of its kind in this jurisdiction. It possibly could be sui generis. We have consistently held bills of review or bills of that nature good when it was shown that a fraud had been prepetrated on the court *and* a party. Hooke v. Hooke, 247 Ala. 450, 25 So.2d 33; Montgomery v. Montgomery, 261 Ala. 416, 74 So.2d 254; Tarlton v. Tarlton, 262 Ala. 67, 77 So.2d 347; Sapos v. Plame, Ala., 128 So.2d 524.[1] In each of those cases, one party to the marriage was alleged to have been the victim of fraud.

But here, both parties to the divorce action are guilty of fraud. They concocted the fraudulent scheme and perpetrated it on the court together. Then after over five years, they both appear voluntarily, seeking modification or enforcement of the decree which the court had no authority to render in 1954.

 Suits for divorce are not ordinary contract cases. Such suits are of a tripartite character, wherein the public occupies in effect the position of a third party, and the court is bound to act for the public in such cases, though the rights of the parties themselves must be fully respected. Ex parte Weissinger, 247 Ala. 113, 22 So. 2d 510; Ratcliff v. Ratcliff, 209 Ala. 377, 96 So. 422. This doctrine is generally recognized in this country. 27A C.J.S. Divorce § 8, p. 30; 17 Am.Jur., Divorce and Separation, § 13, p. 264.

 In this state, a provision in a divorce decree for periodic payments of alimony is not final in the sense that it cannot be changed, and the court has continuing authority or jurisdiction to modify such a provision upon proof of a substantial change in conditions. A petition seeking to modify is regarded as a supplemental proceeding. Murrah v. Bailes, 255 Ala. 178, 50 So.2d 735.

The specific question here presented is whether the Circuit Court of Jefferson County, in Equity, has the power to vacate, of its own motion, the divorce decree rendered by the court in 1954, not void on its face, when in 1960, it is shown in an adversary proceeding between the same parties to modify the decree, and both parties are physically before the court, that the 1954 decree was void because the court did not have jurisdiction of the subject matter.

 It seems appropriate to state the law of this state as it pertains to nonresidents. Tit. 34, § 27, Code 1940, as amended, reads:

"No bill can be filed for a divorce on the ground of voluntary abandonment, unless the party applying therefor, whether husband or wife, has been a bona fide resident citizen of this state for twelve months next preceding the filing of the bill which must be alleged ·in the bill and proved; provided however, the provisions of this section shall not be of force and effect when the court has jurisdiction of both parties to the cause of action."

The proviso was added in 1945 and has been construed by this court. In Jennings

---

1. Post, p. 76.

v. Jennings, 251 Ala. 73, 36 So.2d 236, 3 A.L.R.2d 662, decided in 1948, the full court held that jurisdiction, the judicial power to grant a divorce, is founded on domicile under our system of law. This is so because domicile in the state gives the court jurisdiction of the marital status or the res or subject matter which the court must have before it in order to act. Jurisdiction of the res is essential because the object of a divorce action is to sever the bonds of matrimony, and unless the marital status is before the court, the court cannot act on that status. Thus, where both parties to a divorce action do not reside within this state, the marriage relation is without the state and jurisdiction cannot be acquired by courts of this state even by consent of the parties. And we held in the Jennings case that the court correctly dismissed the bill of complaint. It had a right to do this of its own motion because of lack of jurisdiction.

In Gee v. Gee, 252 Ala. 103, 39 So.2d 406, 408, it was said in discussing the Jennings case: "Therefore, we held that the proviso did not authorize the court in this State to grant a divorce. The parties cannot by consent confer such jurisdiction, nor can the legislature do so by an act, when the res is not within the power of State authorities." We further held that the proviso did apply when only one of the parties was domiciled in Alabama when the bill was filed.

These cases have been followed, have not been overruled, and state the law of this State today.

■ We revert to the question in the instant case. It has long been recognized that where a judgment or decree is void on its face, the court rendering it has inherent power to vacate it at any time, and such power is not dependent on statute. Capps v. Norden, 261 Ala. 676, 75 So.2d 915; Cleveland v. Cleveland, 263 Ala. 530, 83 So.2d 281; Griffin v. Proctor, 244 Ala. 537, 14 So.2d 116; Sweeney v. Tritsch, 151 Ala. 242, 44 So. 184; 13 Ala.Dig., Judgment, ☞346, 349; 8A Ala.Dig., Equity, ☞430(2).

But the 1954 decree in the instant case admittedly was not void on its face. Appellant argues that under Equity Rule 65, Code of Ala., Tit. 7 Appendix, in the absence of a bill of review or a bill in the nature of a bill of review, the trial court lost all power over the matter after the expiration of thirty days. It was so held in Ex parte Kay, 215 Ala. 569, 112 So. 147.

■ The same argument was made in Thompson v. Cook, 20 Cal.2d 564, 127 P.2d 909, 912, where it was sought to set aside a void order after the lapse of over two years from the date it was granted. The court said:

"It is well settled in this state that a court has no power to set aside on motion a judgment or order not void on its face unless the motion is made within a reasonable time, and it has been definitely determined that such time will not extend beyond the limited time fixed by section 473 of the Code of Civil Procedure as at present in force. [Citing cases.] However, to the rule just stated there is a well established exception which provides that although the judgment or order is valid on its face, if the party in favor of whom the judgment or order runs admits facts showing its invalidity, or, without objection on his part, evidence is admitted which clearly shows the existence of such facts, then it is the duty of the court to declare the judgment or order void. * * *"

Freeman on Judgments, § 375a, states:

" * * * The public policy underlying the doctrine of collateral attack is not such as to prevent the interested parties from waiving the protection of the rule limiting collateral inquiries to the face of the record. The rule is not that a judgment which is void will be enforced as if it were valid, but that it

cannot be shown to be void except in certain ways. And if the parties admit or stipulate, or fail to object to the evidence of, the facts showing a lack of jurisdiction, it is then established that the judgment is void as effectively as though shown by the record, and whenever such fact is brought to the attention of the court, it is the duty of the court to so declare as a matter of law."

The rule is stated in 49 C.J.S. Judgments § 421, p. 824, as follows:

"Even though a judgment is valid on its face, if the parties admit facts which show that it is void, or if such facts are established without objection, the case is similar to one wherein the judgment is void on its face and is subject to collateral attack."

Other cases applying this rule are Welch v. Morris, 49 Idaho 781, 291 P. 1048; Griggs v. Venerable Sister Mary Help of Christians, Mo.App., 238 S.W.2d 8; Meyer v. Meyer, 333 Ill.App. 450, 77 N.E.2d 556; Gibson v. Gibson, 193 Or. 139, 237 P.2d 498, 501. In the last cited case, the court said "Irrespective of whether plaintiff is in a position to attack the decree awarding alimony to defendant, such decree cannot stand because we have repeatedly held that where a void decree is brought to the attention of the court, it is the duty of the court on its own motion to vacate the same."

The facts in the instant case fall squarely within the above rule. When Mrs. Hartigan took the stand in 1960, and testified as to the facts upon which the 1954 decree was based, she did so without objection on the part of her husband. He cross-examined her, thereby waiving any objection he might have had. Thus the undisputed facts, before the court without objection, showed that the original decree by the same court in a matter between the same parties was void for the lack of jurisdiction. The parties had voluntarily reappeared before the court and made the supervening invalidity apparent on the face of the record.

Under such circumstances, the court correctly vacated the original decree. As stated in Taylor v. Jones, 202 Ala. 18, 79 So. 356, 357, " * * * It is very true that if a judgment, on its face or on the face of its own record, is absolutely void, it is a nullity, and that, as it is calculated to mislead and deceive the public, the court, ex mero motu, or on motion of a stranger or amicus curiae, may purge the records of the court of such absolutely void and impertinent matters in former judgments, but in law and in fact nothing." To like effect is Pickens v. Clark, 203 Ala. 544, 84 So. 738.

We think the court was authorized to vacate the 1954 decree in order to protect the integrity of its judicial proceedings.

Here, the fraud was not perpetrated against the other party, it was solely against the court. Both spouses came from New York, and by joint collusion and fraud obtained a decree of divorce from our court; and then they both had the temerity—after the running of the statute of limitations against perjury—to ask the same court, in the same case, to modify some of the objectionable results of their joint fraud, but to remain blind to the fact that the court never had jurisdiction in the first place.

It is inconceivable that a circuit court in equity should be powerless to act upon a totally void decree under such circumstances. As discussed post, either of the parties would have been estopped to bring a bill of review or an action in the nature of a bill of review. We must not hold that the preservation of the integrity of judicial process must always wait upon the diligence of litigants who are not estopped to act. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250; American Ins. Co. v. Lucas, D.C., 38 F.Supp. 926; Davidson v. Ream, 175 App.Div. 760, 162 N.Y.S. 375; Halloran v. Blue & White Liberty Cab Co.,

253 Minn. 436, 92 N.W.2d 794; Goetz v. Gunsch, N.D., 80 N.W.2d 548.

■ Appellant argues that Mrs. Hartigan has no standing before the court to have set aside a decree of divorce rendered in her favor through her own fraud on the court, citing Levine v. Levine, 262 Ala. 491, 80 So.2d 835, and Fairclough v. St. Amand, 217 Ala. 19, 114 So. 472. Those cases hold that she would be estopped by her own fraudulent conduct. But the principle is inapplicable here. The action complained of here was not the act of Mrs. Hartigan, it was the act of Judge Bailes. Mr. Hartigan, not his wife, reopened the matter of modification of the original decree and it was his action which brought her personally before the court, resisting his petition for modification and asking additional relief for herself. Under the last two cases cited, neither party would have been entitled to relief.

The action complained of here was the setting aside of the original decree of divorce, which was done by the trial court, ex mero motu, as shown by his uncontroverted answer in the mandamus proceeding. We think it noteworthy to say that Judge Bailes was also the trial judge in the Levine case and ruled that Mrs. Levine was estopped from contesting the decree, although secured by fraud, because she had participated in the fraud and had profited by it.

We further note that we said in Levine v. Levine, 262 Ala. 491, 80 So.2d 235, 238:

"We simply hold that this complainant because of her conduct, as reflected by the bill of complaint, has closed the doors of the equity court to herself and we in no way impinge on our well-settled rule that the Alabama courts have no jurisdiction over the marital status of the parties if neither was domiciled in Alabama. Wilkes v. Wilkes, 245 Ala. 54, 16 So.2d 15; Gee v. Gee, 252 Ala. 103, 39 So.2d 406. Such jurisdiction could not be conferred on the court even with the parties' consent. Jennings v. Jennings, 251 Ala. 73, 36 So.2d 236, 3 A.L.R.2d 662."

We come now to the most difficult aspect of this case. While the record proper does not so show, the briefs before us are in agreement that at the present time Mr. Hartigan has remarried and probably has a child by that marriage. This and other states have recognized that a question of public policy is involved. We said in Davis v. Davis, 255 Ala. 488, 51 So.2d 876, 878:

"As preliminary to the discussion, however, we should like to first refer to the general principle that the humane instincts of civilized society are against supercritical legal technicalities which would bastardize children and when a decree of divorce is rendered, another marriage contracted and children born, it is against public policy to vacate the decree if such an order would render innocent parties guilty of bigamy and their children illegitimate.—Fairclough v. St. Amand, 217 Ala. 19, 114 So. 472; Karren v. Karren, 25 Utah 87, 69 P. 465, 60 L.R.A. 294. We therefore must approach a decision of the question with this declared public policy in mind and if the record is susceptible of two interpretations, the burden being on the appellee to establish the invalidity of the prior divorce, as well as the nullity of his own marriage, we will accept the interpretation which would sustain that public policy and the validity of the subsequent marriage, if at all plausible from the recorded proof."

Here, neither of the parties was seeking to establish the invalidity of the prior divorce. The facts showed conclusively that it was void for the want of jurisdiction. And if Hartigan did remarry, and by that marriage does have a child, he had ample opportunity to show it at the hearing or in his application for rehearing. However, as already noted, the setting aside of the

original decree was brought about by the action of Hartigan in seeking a modification of the decree.

It is almost universally held that the remarriage of a party to a divorce does not deprive a court of the power to set aside the decree or that, as it is often said, the remarriage is not itself a sufficient reason for refusing to vacate or set aside the decree. 12 A.L.R.2d 156; 17 Am.Jur., Divorce and Separation, § 517, p. 613.

■ "A divorce decree or judgment granted by a court without jurisdiction of the subject matter or of the person should be set aside." 27A C.J.S. Divorce § 169 c., p. 684.

We quote from Murphy v. Murphy, 200 Ark. 458, 140 S.W.2d 416, 418. Murphy and his wife lived in Missouri and the court in Arkansas did not have jurisdiction of either the subject matter or the wife when the divorce decree was granted. Murphy remarried. The court said:

"Murphy was, therefore, never a resident of this State, and, as the court below properly found, a fraud was practiced upon the court in procuring the divorce in this State.

\* \* \* \* \* \*

" \* \* \* Such divorces have a 'mail-order' appearance, and we shall not hesitate to set them aside, even though the divorced party shall have remarried before we have that opportunity; and, however innocent the second wife may be, we cannot permit such frauds to be practiced upon the courts of this State.

"At Section 469 of the chapter on Divorce and Separation in 17 American Jurisprudence, page 384, it is said that 'Divorce decrees may be set aside because of fraud even though the rights of innocent third persons are thereby prejudiced, and hence, the pe-

tition need not allege that no such rights have intervened.'

\* \* \* \* \* \*

"The parties to this litigation—all of them—appear to have been trifling with the jurisdiction of our courts, and we know nothing to do with them except to spew them out and to have done with them; and to leave them where they were, so far as we are concerned, when the jurisdiction of our courts was first invoked."

■ Not only is it conclusive that the 1954 divorce decree was void for want of jurisdiction of the subject matter in Alabama, but it is not entitled to full faith and credit in other jurisdictions.

■ The Federal Supreme Court is the final arbiter when the question of full faith and credit is raised under Art. IV, Sec. 1 of the Constitution of the United States. Williams v. State of North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279. Not overruled in Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577. And that court has held that a court in whose territorial jurisdiction neither spouse had a bona fide domicile has no jurisdiction to render a divorce decree and such decree will not be binding either in the state of its rendition or in any other state in which the question might arise. Bell v. Bell, 181 U.S. 175, 21 S.Ct. 551, 45 L.Ed. 804; Andrews v. Andrews, 188 U.S. 14, 23 S.Ct. 237, 47 L.Ed. 366. In the last cited case, the husband, domiciled in Massachusetts, went to South Dakota to get a divorce. His wife first filed papers denying that he was a resident of South Dakota, but later withdrew that answer under an agreement with her husband, and the divorce was granted. The husband married again and had two children by the second marriage. The Federal Supreme Court held that the South Dakota decree was not entitled to full faith and credit in Massachusetts on the ground

that jurisdiction of the subject matter depended upon domicile, and without such domicile, there was no authority to decree a divorce.

▄▄▄ Appellant appropriately submitted this cause by appeal or in the alternative by a petition for mandamus, as was done in Griffin v. Proctor, 244 Ala. 537, 14 So. 2d 116, and Ex parte Phillips, 231 Ala. 364, 165 So. 80. If we had held that the decree was improperly set aside, mandamus would have been the proper remedy, Ex parte Kay, 215 Ala. 569, 112 So. 147. Here, the decree from which the appeal was taken does not have the effect of reinstating the original cause, and appeal is the proper mode of review. Griffin v. Proctor, supra.

Summarizing, we hold:

(1) The original decree was void for want of jurisdiction of the subject matter, the marital res.

(2) The original decree is not entitled to full faith and credit in this or any other state.

(3) Since both parties to the divorce knowingly participated in the fraud on the court, and both voluntarily appeared later in the proceeding to modify the void decree, but still enjoy the divorced status, the court correctly set aside the original decree of its own motion, and correctly denied any modification.

(4) It was appropriate to submit this cause both on appeal and on petition for mandamus, and, in view of our holding, appeal was the proper remedy.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.

