720 So.2d 889 (1998)
Ex parte James Hugh CONWAY.
(Re James Hugh CONWAY v. STATE of Alabama ex rel. DEPARTMENT OF HUMAN RESOURCES on Behalf of Denise BRANNON).
1960770.
Supreme Court of Alabama.
July 31, 1998.
Joseph McNamee Tucker, Lafayette, for petitioner.
J. Coleman Campbell and Lois Brasfield, asst. attys. gen., Department of Human Resources, for respondent.
SEE, Justice.
The Court of Civil Appeals affirmed the judgment of the trial court in this paternity case without an opinion. Conway v. State ex rel. Department of Human Resources, 696 So.2d 1091 (Ala.1996) (table). In light of Ex parte Jenkins, [Ms. 1961520, July 17, 1998] ___ So.2d ___ (Ala.1998), we quash the writ as improvidently granted. We express no opinion as to whether the petitioner would be entitled to relief under Rule 60(b)(6), Ala. R. Civ. P., as that rule was interpreted in Jenkins, *890 because the petitioner has yet to make a Rule 60(b)(6) motion to the trial court.
WRIT QUASHED.
HOOPER, C.J., and ALMON, SHORES, HOUSTON, KENNEDY, and LYONS, JJ., concur.
COOK, J., concurs in the result.
MADDOX, J., dissents.
COOK, Justice (concurring in the result).
This case presents issues similar to those recently addressed by this Court in Ex parte Jenkins, [Ms. 1961520, July 17, 1998] ___ So.2d ___ (Ala.1998). Although I dissented from that part of the Jenkins opinion holding that § 26-17A-1, Ala.Code 1975, could not be applied to judgments that became final before the adoption of that statute, I concur in the result in this case. The evidence presented does not establish that the trial court abused its discretion in denying the petitioner's motion for a blood test. When the petitioner moved for a blood test, he did not present scientific evidence to rebut the adjudication of paternity.
MADDOX, Justice (dissenting).
James Hugh Conway challenges a paternity judgment that was entered in 1981, before the Legislature adopted § 26-17A-1, Ala. Code 1975, which authorizes the reopening of such a judgment when certain facts can be shown. The majority quashes the writ as having been improvidently granted, relying on the reasoning applied in Ex parte Jenkins, [Ms. 1961520, July 17, 1998] ___ So.2d ___ (Ala.1998), a case in which I concurred in part, concurred in the result in part, and dissented in part. I specifically disagreed with the holding that the Legislature could not permit the reopening of a paternity judgment, such as the one involved in this case, that was entered before the effective date of § 26-17A-1.
I cannot agree with the result reached in this present case because the trial court and the Court of Civil Appeals have refused to permit a man adjudicated to be the father of a child to receive the benefits of a Code section that was adopted precisely for men like him. In my opinion, one of the primary reasons the Legislature adopted § 26-17A-1 in the first place was to relieve a man adjudicated to be the father of a child from the obligation to support the child if he can prove, by scientific evidence, that he is not the father.[1]
Because this case involves the same basic legal issue as Jenkins, I could simply dissent in this case and refer to the dissenting views I expressed in Jenkins. However, this case specifically presents the situation that led me to disagree in Jenkins, that is, a situation in which a man is required to pay child support under a threat of a finding of contempt of court, even though the Legislature has stated that he should be able to have the trial court reopen the original judgment upon which the order to pay support is based. Accordingly, I elect to further explain why I must respectfully disagree with other members of the Court on the separation-of-powers question that was discussed in Jenkins and that is also presented in this case. In essence, I believe that a legislature that has the power to impose an obligation upon a man to pay child support certainly can authorize the removal of that obligation if the man shows that the judgment on which the obligation is based was procured by what could be described as a legal fraud practiced upon the court when the paternity adjudication was initially made. Cf. Hartigan v. Hartigan 272 Ala. 67, 128 So.2d 725 (1961) (decree of divorce could be set aside upon a showing that a fraud was committed upon the court to obtain jurisdiction); *891 Stone v. Gulf American Fire & Casualty Co., 554 So.2d 346 (Ala.1989) (a judgment relating to a decedent's estate was reopened to allow an illegitimate child to show that a legal fraud was committed by personal representatives of the estate by withholding from the court evidence that the decedent was in fact her father and that he had acknowledged that fact); Duncan v. Johnson, 338 So.2d 1243 (Ala.1976) (remaindermen could attack a 20-year-old decree ordering the sale of land and a division of the proceeds, where the decree ordering the sale and division was procured on the basis of fraudulent representations by the owner of the life estate, who was the purchaser at the sale).
In this case, the Court, by quashing the writ, gives effect to a trial judge's refusal to reopen a judgment involving the same issue, the same legislative act, and substantially similar facts as Jenkins. By refusing to permit the proceeding to go forward under § 26-17A-1, the Court necessarily seems to create a jurisprudence that allows trial judges to determine on a case-by-case basis which paternity judgments will be reopened and which will remain closed. I would not permit this type of inconsistency, but would instead apply the provisions of the legislative act, which authorizes any man adjudicated to be the father of a child to have the paternity judgment reopened in every case in which he can show the evidence specified in the act.
The facts are undisputed. James Hugh Conway and Denise Brannon were divorced in 1981. While they were married, Denise gave birth to three children. The divorce judgment ordered Conway to pay child support for the three children. At the time of the divorce proceedings, Conway did not challenge his paternity of any of the three children, and he did not in those proceedings challenge the order to pay child support. In 1989, the court granted a joint petition for modification of the custody order, placing the oldest child with Conway and the other two children with Denise. Again, Conway did not at that time challenge his paternity of any of the children.
Subsequently, Conway defaulted on his child support obligations, and in 1995 the State of Alabama, on Denise's behalf, filed a "Contempt Petition for Nonpayment of Support." For the first time, Conway, in his answer, stated that he did not believe he was the father of the two younger children, specifically asserting that § 26-17A-1, which had been enacted in 1994, allowed him to introduce scientific evidence to challenge his paternity. He asked the trial court to order blood tests, but the trial court refused that request and, instead, ordered Conway to pay the child support arrearage. The Court of Civil Appeals affirmed, without an opinion. Conway v. State ex rel. Department of Human Resources, 696 So.2d 1091 (Ala.Civ.App. 1996) (table).
In support of his petition for certiorari review of the Court of Civil Appeals' judgment, Conway argued that § 26-17A-1 allowed him to challenge paternity at any time, regardless of whether he had previously had the opportunity to challenge it. The State argues, among other things, that § 26-17A-1 applies only to allow a man who was a "defendant" in a prior "paternity proceeding" to "reopen" that proceeding, and the State argues that a contempt proceeding based on the 1981 divorce judgment is not a "paternity proceeding." Even Jenkins refutes the State's argument on this point; it clearly recognizes that the provisions of § 26-17A-1 are broad enough to reach paternity determinations contained in divorce judgments.[2] See Ex parte Jenkins, ___ So.2d at ___.
The determinative question is whether the trial judge was required, by the provisions of § 26-17A-1, to reopen the judgment.[3] The majority upholds the trial court's dismissal of Conway's claim. I think the majority errs, because I believe the trial judge was required *892 to allow Conway to present scientific evidence to prove that he was not the father of the two children. The Legislature specifically used the word "shall" when it adopted the statute.
On the ultimate issue of allowing the judgment to be reopened, the trial court and the Court of Civil Appeals concluded that § 26-17A-1 did not require the trial court to reopen the paternity judgment. In quashing the writ, a majority of this Court apparently concludes that the trial judge had no obligation under § 26-17A-1 to reopen the prior judgment; implicit in that conclusion is a reaffirmation of the holding in Jenkins that the Legislature was without power to mandate the reopening of a paternity judgment entered before the effective date of § 26-17A-1. See Jenkins, ___ So.2d at ___. My views of the separation-of-powers principle are simply different from those of the majority.
As I explained in my dissenting opinion in Jenkins, addressing the separation-of-powers issue, I agree that there are some judgments that the Legislature cannot require courts to reopen, and, as I stated there, I do not think the Legislature intended to affect any rights that have become vested before the person adjudicated to be the father seeks to reopen the paternity judgment. In other words, I do not believe the Legislature intended that a party who has received benefits under a judgment of paternity would be, or should be, required to return those benefits. Clearly, however, one adjudicated to be the father should be allowed to show that he should no longer be bound by the judgment, if he can show, by scientific evidence, that the judgment was based not on fact but on a species of legal fraud. Cf. Stone, supra, where this Court permitted an illegitimate child of the late Hank Williams to show that a species of legal fraud had been practiced upon her.
As I stated in Jenkins, the field of family relationships involves duties of support and issues of heirship, and I believe the Legislature has the constitutional power to require the reopening of paternity judgments to prevent a person, who can show by scientific evidence that he is not the father of a child, from having a legal obligation to support that child. Clearly, he should not suffer a loss of liberty by being held in contempt of court for his failure to pay support from the date he files his petition seeking the benefits of § 26-17A-1. Stated differently, I do not believe that the Legislature is powerless to prevent such an egregious wrong, especially when the judgment is based on supposed facts that can be scientifically proven to be untrue. With the development of scientific testing, facts that were once unknown can now be known. Our society is more and more frequently using DNA analysis to prove heretofore unknown or disputed facts.[4]
I am a great believer in the basic power of courts to declare finally the rights of the parties in a particular case or controversy, and I agree that there are cases where courts should use their power to declare a legislative act unconstitutional because of a violation of the separation-of-powers doctrine. However, I believe just as strongly that the Legislature has the power to say that a man should not have to suffer the possible loss of his liberty or property if he fails to support a child that he can show, by scientific evidence, is not his.
The Department of Human Resources, on behalf of the mother, has strongly urged that Conway be required to continue to support two children that he says he can show, by scientific evidence, are not his. I can appreciate the Department's desire to find someone to support the children, but it is my considered judgment that the people of this State, through their elected representatives, have provided for the reopening of the judgment in this case, and that the Department's desires should be subservient to the will of the people as it has been expressed by the Legislature in § 26-17A-1.
Although I realize that the order quashing the writ is not necessarily based on the principle that the children should be provided for *893 even if Conway is not the biological father, I note that the Legislature, being charged with the responsibility of determining how the interests of the children will be protected, has determined that one who can prove he is not the father of a child should not be further required to support that child.[5] I believe the Legislature knew what it was doing when it enacted § 26-17A-1 and that it specifically intended to allow a man in Conway's position to reopen a prior paternity judgment, and I cannot see how the Alabama constitution stands in the way. Consequently, I respectfully dissent.
NOTES
[1] Section 26-17A-1 provides, in pertinent part:

"(a) Upon petition of the defendant in a paternity proceeding where the defendant has been declared the legal father, the case shall be reopened if there is scientific evidence presented by the defendant that he is not the father. The court shall admit into evidence any scientific test recognized by the court that has been conducted in accordance with established scientific principles or the court may order a blood test, or a Deoxyribose Nucleic Acid test of the mother, father, and child. Whenever the court orders a test and any of the persons to be tested refuse to submit to the test, the fact shall be disclosed at the trial, unless good cause is shown."
(Emphasis added.)
[2] Ala.Code 1975, § 26-17-9(a), provides that paternity actions under the Alabama Uniform Parentage Act may be part of a divorce proceeding.
[3] See the statute, quoted in note 1. The State argues that Conway did not present scientific evidence, but the record clearly shows that the trial judge's denial of relief was not based on a lack of scientific evidence indicating that Conway was not the father. It is undisputed that the trial court refused to allow him to offer scientific evidence.
[4] For example, the United States Government has recently removed the remains of an Air Force pilot from the Tomb of the Unknown Soldier at Arlington Cemetery, after DNA testing made it possible to identify the remains. See Steve Vogel, "Unknown Soldier" is Air Force Pilot, Washington Post, June 30, 1998, at A1.
[5] I can appreciate the position of the Department of Human Resources, which seeks to find a person upon whom to pin the obligation of support, but the Department's argument that the Legislature did not intend to relieve a man adjudicated to be the father of a child from that obligation, it seems to me, is misplaced.