THOMAS, Judge.
Karen Lincecum Blackburn (“the wife”) and David Blackburn (“the husband”) were married on November 6, 2004, in Louisiana. The parties later moved to Mobile; it is undisputed that the parties were residents of Alabama when this action commenced. On January 11, 2013, the husband filed a complaint seeking a divorce in the Mobile Circuit Court (“the trial court”), alleging as grounds incompatibility of temperament and an irretrievable breakdown of the marriage. On January 16, 2013, the wife filed an answer to the complaint and a counterclaim seeking a divorce in which she alleged incompatibility of temperament and that the husband had committed acts of domestic violence.
The parties subsequently filed several motions dealing with, among other things, discovery and pendente lite support. On July 11, 2013, the wife filed a “motion to enforce the covenant marriage contract,” in which she asserted that the parties had been married subject to the Louisiana Covenant Marriage Act (“the Act”), codified at La.Rev.Stat. Ann:, § 9:272 et seq., and that the provisions of the Act governed the divorce action between the parties. After a hearing, the trial court entered an order on September 6, 2013, denying the wife’s motion to enforce the parties’ covenant-marriage contract.
A trial began on Wednesday, April 16, 2014, at which the wife appeared pro se and the trial court heard evidence ore tenus. The trial was scheduled to continue on the next day; however, the wife requested a continuance due to a flooding emergency at the marital home; the trial court granted a continuance to Monday, April 21,2014. On that day, the trial court stated on the record that wife was not present at the trial, that she had requested a second continuance that morning, and that her second request for a continuance had been denied;[1] the husband rested his case. The trial court entered a judgment on April 22, 2014, divorcing the parties and dividing the marital property.[2] The wife filed a motion to alter, amend, or vacate or, in the alternative, for a new trial on May 22, 2014. After a hearing, the trial court denied the wife’s postjudgment motion on August 8, 2014.
The wife timely appealed to this court on September 19,2014. The first issue the wife raises in her pro se brief on appeal is whether the trial court erred by failing to enforce the Act. The Act, enacted in 1997, provides, in part:
“A. A covenant marriage is a marriage entered into by one male and one female who understand and agree that the marriage between them is a lifelong relationship .... •
*18 “B. A man and woman may contract a covenant marriage by declaring their intent to do so on their application for a marriage license, as provided in [La. Rev.Stat. Ann.,] 9:224(C), and executing a declaration of intent to contract a coy-enant marriage, as provided in [La.Rev. Stat. Ann.,] 9:273., The application for a marriage license and the declaration of intent shall be filed with the official who issues the marriage license
“C. A covenant marriage terminates only for one of the causes enumerated in [Louisiana] Civil Code Article 101.[ 3J A covenant marriage may be terminated by divorce only upon one of the exclusive grounds enumerated in [La.Rev. Stat. Ann.,] 9:307. A covenant marriage agreement may not be dissolved, rescinded, or otherwise terminated by the mutual consent of the spouses.”
La.Rev.Stat. Ann., § 9:272. Section 9:307.A, La.Rev.Stat. Ann., provides the fault-based grounds for which .a spouse to a covenant marriage may seek a divorce “subsequent to the parties obtaining counseling.” It is undisputed that the' parties in the present case entered into a covenant marriage when they married in Louisiana.
Our research reveals that neither the appellate courts of this state, nor of any other state, have addressed the issue whether a state that does not have laws specifically providing’ for covenant marriages, such as Alabama, must apply the covenant-marriage law of another state during divorce proceedings initiated by parties who are now domiciled in the non-covenant-marriage state. Faced with this issue of first impression, we must consider the feasible options for its resolution. ■ See Peter Hay, The American “Covenant Marriage” in the Conflict of Laws, 64 La. L.Rev. 43 (2003). One option is to determine that our courts do not have subject-matter jurisdiction to grant a divorce to parties who entered into a covenant marriage. However, unlike in Rosengarten v. Downes, 71 Conn.App. 372, 802 A.2d 170 (2002)(concluding that because Connecticut did not recognize same-sex civil unions, the Connecticut court did not have jurisdiction pursuant to Connecticut divorce law to dissolve a civil union performed in another state), the matter presently before us undoubtedly concerns a marriage, as recognized by this state, albeit with statutory limitations regarding the dissolution of that marriage. See Hay, supra, at 51 (“It is most unlikely that th[e] reasoning [of Rosengarten] would extend to covenant marriages. They are intended as marriages ... by the state of their creation.”). We,'therefore, conclude that a court of this state is not precluded from exercising jurisdiction of a divorce action between parties who initially entered into a covenant marriage in a different state.
Having determined that'the trial ■court had jurisdiction to grant the parties a divorce,'the next question is whether a court of this state is required to apply the Act' to parties who participated in a covenant marriage in Louisiana but who subsequently relocated their domicile to Alabama. Although there is no caselaw on point, as a matter of law,
“[u]nder our system of law, judicial power to grant a divorce — jurisdiction, strictly speaking — is founded on domicil. Bell v. Bell, 181 U.S. 175 [ (1901) ]; Andrews v. Andrews, 188 U.S. 14 [ (1903) ]. *19 The framers of the Constitution were familiar with this jurisdictional .prerequisite, and since 1789 neither this Court nor any other court in the English-speaking world has questioned it. Dom-icil implies a nexus between person and place of such permanence as to control the creation of legal relations and responsibilities of the utmost significance. The domicil of one spouse with'in a State gives power to that State, we have held, to dissolve a marriage wheresoever contracted.”
Williams v. North Carolina, 325 U.S. 226, 229-30, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945). We also find in the Restatement (Second) of Conflict of Laws § 285 (1971), that “[t]he local law of the domiciliary state in which the action is brought will be applied to determine the right to divorce.” We further note that our supreme court has stated that “[t]he State is a silent party to divorce actions, public policy is involved and the integrity of the court’s decrees are involved.” Winston v. Winston, 279 Ala. 534, 538, 188 So.2d 264, 267 (1966) (citing Winston v, Winston, 276 Ala. 303, 161 So.2d 588 (1964); and Hartigan v. Hartigan, 272 Ala) 67, 128 So.2d 725 (1961)). Moreover, the' drafter of the Act concedes in an article that' she coauthored that Louisiana ceases to be an “interested state” if neither party has retained ddrrii-cile in Louisiana. See Katherine Shaw Spaht & Symeon C. Symeonides, Covenant Marriage and the Law of Conflicts of Laws, 32 Creighton L.Rev. 1085, 1109 n. 127(1999).
The only authority cited by the wife in her appellate brief for this issue is caselaw standing for the proposition that parties may agree that laws of a state other than Alabama govern their prenuptial agreement. See Holston v. Holston, 128. So.3d 736 (Ala.Civ.App.2013). Even if we. were, to construe the document the parties executed as. a prenuptial agreement, we also note that the “authority of a court ... to grant [a] divorce[ ] is purely statutory.” See Cooley v. Cooley, 51 Ala.App. 273, 277, 284 So.2d 729, 731 (Civ.1973); see also, Gary H. Nichols, Covenant Marriage: Should Tennessee Join the Noble Experiment?, 29 U. Mem. L.Rev. 397, 451 n. 326 (1999)(“A Tennessee court could find that the covenant marriage is not an antenuptial agreement, and that under Tennessee law, spouses may only divorce under the Tennessee statutes as enacted. See, e.g., Chastain v. Chastain, 559 S.W.2d 933, 934 (Tenn.1977) (holding .that ‘the substantive law governing divorce in Tennessee is purely statutory’).”). We further note that, pursuant to La. Civ.Code, art. 3521, a Louisiana court “may grant a divorce or separation only for grounds provided by the law of [Louisiana].” We find no basis, statutory or otherwise, for a court of this state to grant a divorce based upon the laws of a state other than Alabama.
Section 30-2-1(7) and (9), Ala.Code 1975, empowers the circuit -courts of this state to divorce married persons for “a complete incompatibility of temperament” or “an irretrievable breakdown of the marriage.” It is undisputed that the parties were domiciled in Alabama when the husband initiated this action and that the husband, and the wife in her counterclaim, asserted incompatibility as a ground for a divorce. Moreover, our legislature has previously considered, and thus far rejected, the implementation of covenant marriage in Alabama.[4] Given that the parties *20 availed themselves of the laws of this state in their initial filings for a divorce, and that the laws of this state do not provide for a covenant marriage, we conclude that the trial court did not err when it denied the wife’s motion to enforce the parties’ covenant-marriage contract.
We construe the wife’s next argument in her appellate brief as asserting that the trial court erred by failing to rule upon motions dealing with discovery and contempt that had been filed while this action was pending. The wife asserts that the trial court violated Rule 58, Ala. R. Civ. P., when it entered the final divorce judgment. However, the trial court stated in its judgment “that any request not otherwise specifically addressed by this order shall be deemed denied.” Therefore, we conclude that the trial court addressed all outstanding motions before it and that the judgment was a final, appealable judgment.
The remaining arguments in the wife’s brief are not developed and are not supported by relevant legal authority.
“ ‘When an appellant fails to properly argue an issue, that issue is waived and will not be considered. Boshell v. Keith, 418 So.2d 89 (Ala.1982).’ Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996). ‘An appeals court will consider only those issues properly delineated as such, and no matter will be considered on appeal unless ‘presented, and argued in brief. Ex parte Riley, 464 So.2d 92 (Ala.1985).’ Braxton v. Stewart, 539 So.2d 284, 286 (Ala.Civ.App.1988).”
Tucker v, Cullman-Jefferson Cntys. Gas Dist., 864 So.2d 317, 319 (Ala.2003). See also White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008) (“Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived.”).
Based upon the foregoing, the judgment of the trial court divorcing the parties is affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. The trial court memorialized the denial of the wife’s request for a continuance by an order entered on April 22, 2014.

. There were no children born of the marriage.

. Louisiana Civ.Code Ann. art. 101, provides, in its entirety:
"Marriage terminates upon:
"The death of either spouse.
"Divorce.
"A judicial declaration of its nullity, when the marriage is relatively null.
"The issuance of a court order authorizing the spouse of a person presumed dead to remarry, as provided by law.”

. Senate Bill 270, introduced during the 2012 legislative session, proposed a covenant-marriage act similar to the Act; consideration of that hill was postponed indefinitely in the state senate, and the-bill never became law.